1  Hassan A. Zavareei (CA Bar No. 181547)
   Andrea R. Gold*
2  **TYCKO & ZAVAREEI LLP**
   1828 L Street, NW, Suite 1000
3  Washington, DC  20036
   Telephone: (202) 973-0900
4  Facsimile: (202) 973-0950

5  Annick Persinger (CA Bar No. 272996)
   **TYCKO & ZAVAREEI LLP**
6  1970 Broadway, Suite 1070
   Oakland, CA 94612
7  Telephone: (510) 254-6808
   Facsimile: (202) 973-0950

8  Gregory F. Coleman*
   **GREG COLEMAN LAW**
9  First Tennessee Plaza
   800 S. Gay Street, Suite 1100
10 Knoxville, TN 37929
   Telephone: (865) 247-0080
11 Facsimile: (865) 522-0049

12 Nick Suciu III*
   **BARBAT, MANSOUR & SUCIU PLLC**
13 1644 Bracken Rd.
   Bloomfield Hills, Michigan 48302
14 Telephone: (313) 303-3472

15 *Pro Hac Vice to follow*

16 *Attorneys for Plaintiffs and the Proposed Class*

17

18                    **UNITED STATES DISTRICT COURT**
                      **NORTHERN DISTRICT OF CALIFORNIA**
19

20 JOSEPH CASILLAS and DE'JHONTAI        Case No.: 3:19-cv-02455
   BANKS, on behalf of themselves and all
21 others similarly situated,
                                         **CLASS ACTION COMPLAINT**
22              Plaintiffs,

23 v.                                    1.  Breach of Express Warranty
                                         2.  Breach of Implied Warranty
24 APPLE INC.,                           3.  Breach of Written Warranty Under the
                                             Magnuson-Moss Warranty Act (15 U.S.C.
25              Defendant.                    § 2301, *et seq.*)
                                         4.  Violation of the Song-Beverly Consumer
26                                           Warranty Act (Cal. Civ. Code § 1790)
                                         5.  Violation of the California Consumer Legal
27

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

Remedies Act (Cal. Civ. Code § 1750)

6. Violation of California Unfair Competition Laws (Cal. Bus. & Prof. Code § 17200)
7. Violation of California False Advertising Law (Cal. Bus. & Prof. Code § 17500)
8. Negligent Misrepresentation
9. Unjust Enrichment

**DEMAND FOR JURY TRIAL**

CLASS ACTION COMPLAINT

## CLASS ACTION COMPLAINT

1.    Plaintiffs Joseph Casillas and De'Jhontai Banks ("Plaintiffs"), individually and on behalf of all others similarly situated, by and through counsel, bring this action against Apple Inc. ("Apple"). Plaintiffs' allegations herein are based upon personal knowledge and belief as to their own acts and upon the investigation of their counsel, including information received from class members who have experienced the failure of the audio integrated circuit of their Apple iPhone 7 or 7 Plus devices (the "Audio IC Defect") as described herein, and information and belief as to all other matters.

## INTRODUCTION

2.    Plaintiffs bring this action, individually and on behalf of a Class of similarly situated owners of Apple's iPhone 7 and/or iPhone 7 Plus ("iPhones"). This action arises from Apple's concealment of a material defect that ultimately causes iPhone audio features to become unresponsive and fail of their essential purpose as smartphones, called the "Audio IC Defect" herein.

3.    Apple has long been aware of the Audio IC Defect, yet, notwithstanding its longstanding knowledge, Apple routinely refuses to repair the iPhones without charge when the Audio IC Defect manifests.

4.    Many iPhone owners communicated with Apple's employees and agents to request that Apple remediate and/or address the Audio IC Defect and/or resulting damage at no expense. Apple failed and/or refused to do so.

5.    As a result of Apple's unfair, deceptive, and/or fraudulent business practices, owners of the iPhones, including Plaintiffs, have suffered ascertainable losses. The unfair and deceptive trade practices committed by Apple were conducted in a manner giving rise to substantial aggravating circumstances.

6.    Had Plaintiffs and other Class Members known about the Audio IC Defect at the time of purchase, they would not have bought the iPhones, or else would have paid substantially less for them.

7.    As a result of the Audio IC Defect and the monetary costs associated with attempting to repair it, Plaintiffs and the Class Members suffered an injury in fact, incurred damages, and otherwise have been harmed by Apple's conduct

8.      Accordingly, Plaintiffs bring this action to redress Apple's violations of the various states' consumer fraud statutes, fraud, negligent misrepresentation, breach of implied warranty, unjust enrichment, and for violations of the federal Magnuson-Moss Warranty Act and California's Song-Beverly Consumer Warranty Act.

## THE PARTIES

9.      Plaintiff Joseph Casillas is a resident and citizen of Emeryville (Alameda County), California. On or about July 8, 2017, Mr. Casillas purchased an iPhone 7 from a Best Buy retail store in Vallejo, California.

10.      Plaintiff De'Jhontai Banks is a resident and citizen of San Jose (Santa Clara County), California. On or about January 1, 2017, Ms. Banks purchased an iPhone 7 through a Verizon retailer located in Fremont, California.

11.      Defendant Apple Inc. is a corporation incorporated under the laws of the State of California. Apple's corporate headquarters and principal place of business are located in Cupertino (Santa Clara County), California. Accordingly, for jurisdictional purposes, Defendant Apple Inc. is a citizen of California.

## JURISDICTION AND VENUE

12.      This Court has subject matter jurisdiction pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d). The aggregated claims of the individual class members exceed the sum or value of $5,000,000.00, exclusive of interest and costs; there are more than 100 putative class members; and at least one putative class member is from a state different from Apple.

13.      This Court has personal jurisdiction over Apple because it is incorporated under the laws of the State of California; its corporate headquarters and principal place of business are located in Cupertino (Santa Clara County), California; it conducts substantial business in this District; and a substantial part of the acts and omissions complained of occurred in this District.

14.      Venue is proper in this judicial district under 28 U.S.C § 1391 because a substantial part of the events or omissions giving rise to the claim occurred in this District. Apple has its principal place of business in this District; it is authorized to conduct business in this District; it has intentionally availed

itself of the laws and markets within this District; it does substantial business in this District; and it is subject to personal jurisdiction in this District. Plaintiffs' declarations stating facts showing that this action has been commenced in a proper place for trial is attached as **Exhibit 1**.

## INTRADISTRICT ASSIGNMENT

15.     Assignment to the San Francisco Division is proper under Civil Local Rules 3-2(c) and 3-2(d) because a substantial part of the events or omissions giving rise to Plaintiff Casillas' claims occurred in Emeryville.

## PLAINTIFFS' FACTUAL ALLEGATIONS

Plaintiff Joseph Casillas

16.     On or about July 8, 2017, while a resident and citizen of the State of California, Plaintiff Joseph Casillas purchased a new iPhone 7 from a Best Buy retail store in Vallejo, California. Mr. Casillas purchased his phone for approximately $969.99. Mr. Casillas purchased the iPhone in part because of its reputation for being a high quality and reliable product.

17.     Plaintiff Casillas' iPhone came with Apple's express warranty.

18.     Starting in approximately November 2018, Plaintiff Casillas noticed that his phone's sound was distorted with audible static while attempting to play a video on his phone. Additionally, his phone's speaker function exhibits the same distorted sound when on phone calls or attempting to utilize any other audio functions with phone's speaker. These are common indications of the Audio IC Defect. These issues have continued since he first experienced the Audio IC Defect.

19.     Shortly after first experiencing the audio issue, Plaintiff Casillas contacted Apple Support seeking assistance with his defective iPhone. Over the course of this conversation, Plaintiff Casillas was told that Apple could not diagnose a problem with his phone despite the continuing distorted audio. Apple neither mentioned that it was a known defect nor did Apple agree to repair the defect without charging the costs to Mr. Casillas.

20.     Had Plaintiff Casillas been aware of the Audio IC Defect, he either would not have purchased the iPhone 7, or else would have paid significantly less for it. He has not received the benefit of his bargain.

21.     If Plaintiff Casillas' iPhone functioned as advertised, Mr. Casillas would purchase an iPhone again in the future. Alternatively, if the Court were to issue an injunction ordering Apple to comply with advertising and warranty laws, Mr. Casillas would likely purchase an iPhone again in the future.

Plaintiff De'Jhontai Banks

22.     On or about January 1, 2017, Plaintiff De'Jhontai Banks purchased a new iPhone 7 from a Verizon retail store located in Fremont, California. Ms. Banks purchased her phone for approximately $1,200.00. Ms. Banks purchased the iPhone in part because of its reputation for being a high quality and reliable product.

23.     Plaintiff Banks' iPhone came with Apple's express warranty.

24.     On or about August 1, 2018, Plaintiff Banks noticed that she was unable to hear callers unless she used her iPhone's speaker function. These are common indications of the Audio IC Defect. These issues have continued since she first experienced the Audio IC Defect, and all of Ms. Banks' calls must be made in this manner.

25.     In early 2019, Plaintiff Banks contacted Apple Support seeking assistance with her defective iPhone. Over the course of this conversation, Plaintiff Banks was told that she would have to pay to fix the "speaker issue" related to the Audio IC Defect.

26.     Had Plaintiff Banks been aware of the Audio IC Defect, she either would not have purchased the iPhone 7, or else would have paid significantly less for it. She has not received the benefit of her bargain.

27.     If Plaintiff Banks' iPhone functioned as advertised, Ms. Banks would purchase an iPhone again in the future. Alternatively, if the Court were to issue an injunction ordering Apple to comply with advertising and warranty laws, Ms. Banks would likely purchase an iPhone again in the future.

## GENERAL ALLEGATIONS

### A.     Apple's iPhone

28.     Defendant Apple designs, manufactures, markets, and sells the iPhone series of smartphones. The iPhone 7 and 7 Plus were released on September 16, 2016.

29.     iPhones are designed and built around the use of a touchscreen whereby the user touches the screen directly to interact with the device, as opposed to using a traditional number pad or keyboard, and it allows the user to interact with the device through a variety of audio responsive applications.

30.     In the United States, the iPhone holds the largest share of the smartphone market. In 2018, iPhones accounted for approximately 40.75% of the market share followed by Samsung with approximately 24.5% of the market share.

31.     iPhones are capable of sending text messages, taking pictures, capturing video, playing music, browsing the internet, sending and receiving email, using GPS navigation, using the touchscreen to make and take calls, and downloading and using various applications, among other functions. Many of these functions allow the user to perform audio commands as well as communicating information to the user through audio responses.

32.     Upon information and belief, purchasers of the iPhones are given fourteen days from the date of purchase (or from the date the product is received if purchased online) to return the iPhones if purchased directly from Apple or through an authorized reseller, such as Best Buy, Verizon, or AT&T.

**B.      The Audio IC Defect**

33.     Unbeknownst to consumers, the iPhones suffer from a material Audio IC Defect that leads to audio failures. As a result, consumers experience poor sound or complete failure of the sound system.

34.     Often, the Audio IC Defect impacts the time it takes for the device to power on, a complete failure of the phone's Voice Memo application, an inoperable speaker function, and other issues associated with the phones' sound system, including but not limited to making ordinary telephone calls.

35.     Upon information and belief, the Audio IC Defect results from a problem with the iPhone's external casing and the location of the audio IC chip on the iPhone's logic board. The materials used in the iPhone's external casing are insufficient and inadequate to protect the internal parts—including the audio IC chip—in light of reasonable and foreseeable use by consumers.

36.     Apple has advertised that the "iPhone 7 and iPhone 7 Plus dramatically improve every aspect of the iPhone experience, reaching a new level of innovation and precision to make this the best

iPhone we have ever made. The completely redesigned cameras shoot incredible photos and videos day or night, the A10 Fusion chip is the most powerful chip on any smartphone while delivering the best battery life ever in an iPhone, and an entirely new stereo speaker system provides twice the sound, all within the first water and dust resistant iPhone."[1]

37.     However, the external casing of the iPhone is not sturdy, strong, durable, or drastically improved. Instead, it is manufactured from substandard materials that are neither appropriate for nor durable enough for the ordinary and expected use of the iPhone.

38.     The motherboard located inside the iPhone (which Apple calls the "logic board") contains an audio controller chip (referred to as the "audio IC chip"). An illustration of the logic board and the audio IC chip—outlined in red—is included below.



39.     The audio IC chip is responsible for all audio related functions in Apple's iPhone operating system software, iOS.

40.     From the first day of use, the Audio IC Defect exposes the internal components of the iPhones to increased stress and physical harm.

---

[1] https://www.apple.com/newsroom/2016/09/apple-introduces-iphone-7-iphone-7-plus (last visited May 3, 2019).

41.     Upon information and belief, the Audio IC Defect causes significant decreased strength and durability directly over the audio controller chip on the logic board. Due to the flexion allowed by the phone's casing and the location of the audio IC chip on the logic board, over time the audio IC chip loses electrical continuity with the logic board, resulting in a manifestation of the Audio IC Defect. The audio IC chip is a delicate circuit. Regular and anticipated use of the iPhone results in manifestation of the Audio IC Defect, i.e. a failure of the solder to adhere the audio IC chip to the logic board. Once the circuit has failed, the audio IC chip is unable to operate properly with the phone causing issues ranging from a wide variety of audio failures to a failure of the devices' ability to reboot.

42.     The Audio IC Defect can be repaired by trained technicians through the use of a thin copper wire soldered from the audio IC chip to the iPhone's logic board. This repair allows the audio IC chip to remain connected to the logic board despite the flexion of the device.

43.     The iPhone 6 and iPhone 6 Plus suffered from a similar issue known as the "Touch Disease." This touchscreen defect was associated with a similar flexion-based issue present in the housing of that series of iPhones which affected the touch IC chips.

44.     Apple's experience with iPhone 6 and iPhone 6 Plus should have raised alarm within the company that such flexion-based defects in their products are responsible for serious hardware malfunctions including the audio issues present in the iPhone 7 and iPhone 7 Plus.

### C.     Apple's Knowledge of the Audio IC Defect

45.     Plaintiffs' experiences are by no means isolated occurrences. Indeed, the internet is replete with examples of blogs and other websites where consumers have complained of the exact same Audio IC Defect within the iPhone 7s and 7 Pluses.

46.     Complaints on Apple's own website regarding the Audio IC Defect date back as far as December 30, 2016, where a user submitted the below message:

> Anytime I'm on the phone I can hear the other person fine but they can't hear me. They can only hear me when I have them on speaker phone. My phone is brand new, just got it about 2 weeks ago. I've tried everything to fix it (hard reset, volume controls, etc) and nothing helps. I've tried it in different areas using wifi and using my Verizon LTE network. Same thing.

> They say my phone sounds like scratching static unless I put them on speaker phone, then it stops. What's going on?[2]

47.     This consumer complaint prompted a multitude of responses from other Apple customers, including the following from August 18, 2017:

> The official answer is, "We know it's a problem with some devices and we're not going to replace your phone."
>
> Mine is under warranty. Eventually I lost speakerphone too. The headphones don't work either.
>
> Apple is aware. They're not going to solve the problem. You just bought a bad phone, luck of the draw. They actually told me that since they know it's a bug, they're not responsible for replacing the device.[3]

48.     Since December 30, 2016, a plethora of owners of the iPhones have complained on Apple's own website regarding the Audio IC Defect. Not only does the original poster complain of the Audio IC Defect, but users in the comments section of the post often state they are experiencing the same or exacerbated issues as the original poster.

49.     The Audio IC Defect has become so pervasive with the iPhone that consumers have dubbed the issue as iPhone 7 loop disease. The Audio IC Defect has been thoroughly discussed by Apple users on the company's own discussion forum with multiple owners expressing their issues and concerns with the Defect. One consumer described her experience as follows:

> We are so frustrated with Apple and our daughter's iPhone 7. She cannot hear callers, use FaceTime or Siri, or use her headphones. We finally got a name for the problem – loop disease. Has anyone else had this issue and if so were you able to resolve it? Preferably without spending more money. Thanks.[4]

50.     Again, responses to this consumer complaint were followed by other owners who were suffering from similar issues:

> Dear Apple,
>
> I am facing exact same issue. This problem started happening in the 15th month after the purchase. I cannot use mic and cannot record voice memo's. After the phone is restarted it takes nearly 5 minutes to boot up. The only

---

[2] https://discussions.apple.com/thread/7808120?answerId=32188435022#32188435022 (last visited May 3, 2019).

[3] *Id.*

[4] https://discussions.apple.com/thread/250046921 (last visited Apr. 17, 2019).

way I can receive and make calls is by using Bluetooth headset. Without bluetooth headset, the phone is of no use, as neither I would be able to receive or make calls.

Without mic I cannot use siri as well. When I visited apple center, they diagnosed mentioned that it is a hardware issue with the Audio IC and I will have to pay to check if it can be repaired, as the phone is out of warranty. They also mentioned that if it cannot be repaired, they would provide me a replacement option in which I will have to shell out almost 1/3rd of the cost of the phone, which as a solution is not acceptable to me after spending a good amount of money while purchasing the phone.

If you search on internet, there are numerous users facing this issue, which could potentially be due to a hardware defect.

As I have spent my hard earned money behind a Apple as a reputed brand and I did not expect that it would only last 15 months. Now since I have posted a technical problem in your community. Please provide a solution instead of deleting my post.

Regards,
Manish[5]

51.     Independent repair shops are also reporting the Audio IC Defect as an "epidemic" which affects iPhones that "are just now getting to the age where they are off-warranty."[6]

52.     For earlier iPhone models, Apple employed a widely publicized testing regimen which included five methods of durability testing prior to those model's public release. Upon information and belief, Apple conducts extensive pre-release durability testing on all of its products, including the iPhones.[7]

A.     First, Apple uses a "three-point bending test" to test the iPhone's ability to handle reasonable force. Apple applies pressure to three different points along the iPhone's frame, and then evaluates the iPhone's performance at the test's conclusion.

---

[5] Id.

[6] https://motherboard.vice.com/en_us/article/8xem8x/iphone-7-grayed-out-speaker-loop-disease-boot -loop-hangs-on-apple-logo (last visited May 3, 2019).

[7] https://blogs.wsj.com/personal-technology/2014/09/25/bendgate-five-durability-tests-apple-used-on-the-iphone-6-plus (last visited May 3, 2019).

B.   Second, Apple uses a "pressure-point cycling test" that expends substantial force on the iPhones' display and casing. This test reportedly ensures that the iPhones can be bent and pushed many times over during their lifespan.

C.   Third, Apple uses "torsion testing," whereby the iPhones are twisted and torqued in various situations. This test is reportedly to ensure the iPhones can handle actual use scenarios, such as sitting on an iPhone unevenly.

D.   Fourth, Apple uses "sit tests" whereby an Apple engineer takes an iPhone and sits down thousands of times. This test is reportedly to ensure the iPhones will remain functional no matter how individuals place the iPhones in their pockets. Apple's senior vice president of hardware engineering, Dan Riccio, stated that this test has three parts: (1) a simulation of a typical user sitting down on a hard surface; (2) a simulation of a typical user sinking into something softer like a couch; and (3) "worst-case" tests where a user sits down on a hard surface at an angle.[8]

E.   Fifth, Apple uses real-life user studies. Apple provides hundreds of company employees with actual iPhones and asks them to use the iPhones throughout the day in various situations to test for both durability and performance.

53.   Through this extensive pre-release testing that specifically evaluated the iPhones durability, Apple knew or should have known of the Audio IC Defect. The Audio IC Defect is a defect that results from the reasonable, foreseeable use by consumers that is part of the testing methodology above. Put simply, Apple's pre-release testing should have alerted it to the fact that the external casing suffers from a defect causing significant stress on the logic board and audio IC chip.

54.   In addition, on September 25, 2014, Apple issued a press release in response to allegations that the previous iteration of the iPhone, the iPhone 6 and 6 Plus, were manufactured with external casing that was suspectble to bending under normal use and was insufficient to protect the internal components on the logic boards. There is active litigation regarding the impact of the iPhone 6 and 6 Plus bending on

---

[8] https://9to5mac.com/2014/09/25/bendgate-iphone-stress-test-facility (last visited May 3, 2019).

the touchscreen controller chips. *See Davidson v. Apple Inc.*, No. 5:16-cv-4942-LHK (N.D. Cal.). Apple knew, or should have known, that the insufficient external casing on the iPhone 7 and 7 Plus would cause the Audio IC Defect in the same manner that it knew or should have known that the insufficient internal casing on the iPhone 6 and 6 Plus would cause the touchscreen controller chips to fail.

55.     To date, Apple has not publicly released any explanation for Audio IC Defect, which has also been called "Loop Disease" by consumers. Upon information and belief, Apple acknowledged that an audio defect was present in the iPhone 7 and iPhone 7 Plus models via an internal document distributed to Apple Authorized Service Providers which has subsequently been deleted. According to reports, Apple initially authorized repairs outside the phone's warranty period for audio issues ranging from grayed-out speaker buttons during phone calls to customers not being heard during phone calls or FaceTime video chats. Apple has since rescinded any such out-of-warranty repair authorization.[9]

56.     This internal document illustrates Apple knew or should have known that the iPhones suffer from the Audio IC Defect, were not fit for their intended use as smartphones, and would fail under normal and foreseeable use by consumers.

57.     Apple's initial response to the Audio IC Defect demonstrates its recognition of the issue, its knowledge that the Audio IC Defect was present at the time of sale, and its understanding that the Audio IC Defect frequently manifests itself within months of purchase. As such, Apple's preliminary internal acknowledgment and subsequent discontinuation of their out-of-warranty repairs without public announcement of the Audio IC Defect amounts to misrepresentation and concealment of the Audio IC Defect.

58.     Upon information and belief, Apple was well aware of the Audio IC Defect based upon: (1) their own records of customers' complaints, (2) Apple Store repair records, (3) its own pre-release testing, (4) warranty and post-warranty claims, (5) internal documentation, and (6) other various sources.

---

[9] https://www.macrumors.com/2018/07/17/apple-ends-free-oow-iphone-7-mic-repairs (last visited May 3, 2019).

Nevertheless, Apple failed to notify consumers of the nature and extent of the problems with the iPhones or provide any adequate remedy.

59.     Apple failed to adequately research, test, and/or manufacture the iPhones before warranting, advertising, promoting, marketing, and selling the iPhones.

60.     In many instances, consumers have incurred and will continue to incur expenses for the diagnosis of the Audio IC Defect, as well as the repair and replacement of their iPhones, despite such defect having been contained in the iPhones when manufactured by Apple and being present at the point of sale.

61.     Consumers were without access to the information concealed by Apple as described herein, and therefore reasonably relied on Apple's representations and warranties regarding the quality, durability, and other material characteristics of the iPhones. Had consumers known of the defect, they would have paid less for the iPhones than the amounts they actually paid, or would not have purchased the iPhones at all.

### D.   **Apple's Express Warranty Is Unconscionable**

62.     Apple offers the following one-year warranty when a consumer purchases an iPhone 7 or iPhone 7 Plus:

> Apple Inc. of One Infinite Loop, Cupertino, California, U.S.A. 95014 ("Apple") warrants the Apple-branded iPhone, iPad, iPod or Apple TV hardware product and the Apple-branded accessories contained in the original packaging ("Apple Product") against *defects in materials* and workmanship when used normally in accordance with Apple's published guidelines for a period of ONE (1) YEAR from the date of original retail purchase by the end-user purchaser ("Warranty Period"). Apple's published guidelines include but are not limited to information contained in technical specifications, user manuals and service communications.[10]

63.     As stated above, there is ample evidence that Apple has been aware of the Audio IC Defect from widespread complaints and media coverage surrounding the Audio IC Defect since, at the very latest, December 30, 2016, just weeks after Apple began selling the iPhones.

---

[10] http://www.apple.com/legal/warranty/products/ios-warranty-document-us.html (last visited May 3, 2019) (emphasis added).

64.     In addition, journalists have released articles recounting information provided by Apple Store employees that Apple was both aware of the Audio IC Defect and actively concealing it from consumers while the iPhones were being sold sold—and at which time the iPhones were still covered under the express warranty.

65.     One such article published by MacRumors outlines Apple's standard operating procedure ("SOP") when consumers presented the Audio IC Defect to repair at Apple Stores.[11] On information and belief, for a short time in 2018, when customers would present their phones with the symptoms of the Audio IC Defect, Apple instructed their employees to run audio diagnostics on the devices. Should the iPhones continue to exhibit the symptoms, a repair would be authorized. However, upon information and belief, this program was never publicized and was only available for a short period of time.

66.     Moreover, Apple knew or should have known of the Audio IC Defect during its extensive internal, pre-release testing.

67.     As such, Apple's one-year express warranty is both substantively and procedurally unconscionable. Consumers did not have the ability to negotiate the terms or length of the express warranty and Apple concealed the Audio IC Defect from the Plaintiffs and the Class Members. Apple has been aware of the Audio IC Defect since at least December 2016, when the first publicly available consumer complaint of the Audio IC Defect was posted to their website, and continually after Apple issued their internal procedures for diagnosing and repairing phones exhibiting the Audio IC Defect. Despite the pre-release durability testing, consumer complaints, media coverage, and Apple's own internal policies showing the large number of Audio IC Defect complaints both during and shortly after Apple's express warranty expired, Apple concealed the problem and discontinued its repair program. Upon information and belief, Apple knew of and concealed the Audio IC Defect before these events, including at the time of sale.

---

[11] http://www.macrumors.com/2018/12/17/iphone-7-microphone-defect (last visited May 3, 2019).

1

## CLASS ACTION ALLEGATIONS

2      68.     Plaintiffs bring this suit as a class action on behalf of themselves and on behalf of all others

3   similarly situated pursuant to Federal Rule of Civil Procedure 23. This action satisfies the numerosity,

4   commonality, typicality, adequacy, predominance and superiority requirements of the provisions of Rule

5   23.

6      69.     Plaintiffs seek to represent the following "Nationwide Class":

7              All persons or entities in the United States that purchased an Apple iPhone
               7 or 7 Plus.

8      70.     In the alternative, Plaintiffs seek to represent the following state sub-class:

9              All persons or entities in California that purchased an Apple iPhone 7 or 7
               Plus for primarily personal, family, or household purposes, as defined by
10             California Civil Code § 1791(a) (the "California Class").

11     71.     The Nationwide Class and California Class will be referred to collectively as the "Class."

12     72.     *Numerosity:* Members of the Class are so numerous that joinder of all members is

13  impracticable. While the exact number of Class Members remains unknown at this time, upon information

14  and belief, there are hundreds of thousands of putative Class Members throughout the United States who

15  are generally ascertainable by appropriate discovery.

16     73.     *Commonality*: This action involves common questions of law and fact, which predominate

17  over any questions affecting individual Class Members. These common legal and factual questions

18  include, but are not limited to, the following:

19         a.   Whether the iPhones suffer from the Audio IC Defect;

20         b.   Whether Apple engaged in the conduct alleged herein;

21         c.   Whether Apple designed, manufactured, marketed, distributed, sold or otherwise placed

22             the iPhones into the stream of commerce in the United States knowing that the iPhones

23             suffered from the Audio IC Defect;

24         d.   When Apple first learned of the existence of the Audio IC Defect;

25         e.   Whether Apple intentionally concealed the Audio IC Defect in the iPhones from

26             consumers;

27

-14-

CLASS ACTION COMPLAINT

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

     f.    Whether Apple breached the terms of its contracts with purchasers when it marketed and sold the iPhones containing the Audio IC Defect;

     g.    Whether Plaintiffs and the other Class Members have been harmed by the fraud alleged herein;

     h.    Whether Apple was unjustly enriched by its deceptive practices; and

     i.    Whether Plaintiffs and the Class are entitled to equitable or injunctive relief.

74.    ***Typicality***: Plaintiffs' claims are typical of those of the other Class Members because, *inter alia*, all members of the Class were injured through the common misconduct described above and were subject to Apple's unfair and unlawful conduct. Plaintiffs are advancing the same claims and legal theories on behalf of themselves and all members of the Class.

75.    ***Adequacy of Representation:*** Plaintiffs will fairly and adequately represent and protect the interests of the Class in that they have no disabling conflicts of interest that would be antagonistic to those of the other members of the Class. Plaintiffs seek no relief that is antagonistic or adverse to the other members of the Class and the infringement of the rights and the damages they have suffered are typical of other Class Members. Plaintiffs have retained counsel experienced in complex consumer class action litigation, and Plaintiffs intend to prosecute this action vigorously.

76.    ***Superiority:*** Class litigation is an appropriate method for fair and efficient adjudication of the claims involved. Class action treatment is superior to all other available methods for the fair and efficient adjudication of the controversy alleged herein; it will permit a large number of Class Members to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of evidence, effort and expense that hundreds of individual actions would require. Class action treatment will permit the adjudication of relatively modest claims by certain Class Members, who could not individually afford to litigate a complex claim against large corporate defendants. Further, even for those Class Members who could afford to litigate such a claim, it would still be economically impractical.

CLASS ACTION COMPLAINT

77.   The nature of this action and the nature of laws available to Plaintiffs and the Class make the use of the class action device a particularly efficient and appropriate procedure to afford relief to Plaintiffs and the Class for the wrongs alleged because Apple would necessarily gain an unconscionable advantage since they would be able to exploit and overwhelm the limited resources of each individual Class member with superior financial and legal resources; the costs of individual suits could unreasonably consume the amounts that would be recovered; proof of a common course of conduct to which Plaintiffs were exposed is representative of that experienced by the Class and will establish the right of each member of the Class to recover on the cause of action alleged; and individual actions would create a risk of inconsistent results and would be unnecessary and duplicative of this litigation.

78.   Plaintiffs reserve the right to modify or amend the definition of the proposed class and subclass before the Court determines whether certification is appropriate and as the parties engage in discovery.

79.   The class action is superior to all other available methods for the fair and efficient adjudication of this controversy. Because of the number and nature of common questions of fact and law, multiple separate lawsuits would not serve the interest of judicial economy.

80.   Individual litigation of the claims of all Class Members is economically unfeasible and procedurally impracticable. While the aggregate damages sustained by the Class are likely in the millions of dollars, the individual damages incurred by each Member resulting from Apple's wrongful conduct are too small to warrant the expense of individual suits. The likelihood of individual Class Members prosecuting separate claims is remote, and even if every Class member could afford individual litigation, the court system would be unduly burdened by individual litigation of such cases. Individual Class Members do not have a significant interest in individually controlling the prosecution of separate actions, and the individualized litigation would also present the potential for varying, inconsistent, or contradictory judgments and would magnify the delay and expense to all parties and to the court system resulting from multiple trials of the same factual issues. Plaintiffs know of no difficulty to be encountered in the management of this action that would preclude its maintenance as a class action. A class action in this

1    matter will avoid case management difficulties and provide multiple benefits, including efficiency,
2    economy of scale, unitary adjudication with consistent results and equal protection of the rights of each
3    Class member, all by way of the comprehensive and efficient supervision of the litigation by a single
4    court.

5        81.     Notice of a certified class action and of any result or resolution of the litigation can be
6    provided to Class Members by first-class mail, email, or publication, or such other methods of notice as
7    deemed appropriate by the Court.

8        82.     Plaintiffs do not anticipate any difficulty in the management of this litigation.

### FIRST CLAIM FOR RELIEF
**BREACH OF EXPRESS WARRANTY**
**(By All Plaintiffs on Behalf of the Nationwide Class or, Alternatively, the California Class)**

12       83.     Plaintiffs incorporate by reference all allegations of the preceding paragraphs as though
13   fully set forth herein.

14       84.     Apple provided Plaintiffs and the Class Members with the following express warranty:
15   "Apple Inc. of One Infinite Loop, Cupertino, California, U.S.A. 95014 ("Apple") warrants the Apple-
16   branded iPhone, iPad, iPod or Apple TV hardware product and the Apple-branded accessories contained
17   in the original packaging ("Apple Product") against defects in materials and workmanship when used
18   normally in accordance with Apple's published guidelines for a period of ONE (1) YEAR from the date
19   of original retail purchase by the end-user purchaser ("Warranty Period"). Apple's published guidelines
20   include but are not limited to information contained in technical specifications, user manuals and service
21   communications."

22       85.     The above express warranty became part of the basis of the bargain between Plaintiffs and
23   the Class Members and Apple.

24       86.     Plaintiffs and the Class Members presented their iPhones for repairs after the Audio IC
25   Defect manifested. Apple, however, declined to remedy the Audio IC Defects in Plaintiffs' and the Class
26   Members' iPhones and thereby breached its express warranties with Plaintiffs and the Class Members.

27

87.     Plaintiffs and the Class Members notified Apple of the breaches within a reasonable time, and/or were not required to do so because affording Apple a reasonable opportunity to cure its breach of written warranty would have been futile. Apple also knew of the defect and yet has chosen to conceal it and fail to comply with its warranty obligations.

88.     The Audio IC Defect is a defect as defined by Apple's express warranty.

89.     As a direct and proximate cause of Apple's breach, Plaintiffs and the Class Members bought iPhones that they otherwise would not have, overpaid for their iPhones, did not receive the benefit of their bargain, and their iPhones suffered a diminution in value. Plaintiffs and the Class Members have also incurred and will continue to incur costs for replacement iPhones.

90.     As alleged above, the terms of Apple's express warranty are both substantively and procedurally unconscionable. Apple's attempt to disclaim or limit these express warranties vis-à-vis consumers is unconscionable and unenforceable under the circumstances here. Specifically, Apple's warranty limitation is unenforceable because it knowingly sold a defective product without informing consumers about the defect.

91.     The time limits contained in Apple's warranty period were also unconscionable and inadequate to protect Plaintiffs and the Class Members. Among other things, Plaintiffs and Class Members had no meaningful choice in determining these time limitations the terms of which unreasonably favored Apple. A gross disparity in bargaining power existed between Apple and Plaintiffs and the Class Members, and Apple knew or should have known that the iPhones were defective at the time of sale and would fail well before their useful lives.

92.     Plaintiffs and Class Members have complied with all obligations under the warranty, or otherwise have been excused from performance of said obligations as a result of Apple's conduct described herein.

93.     Plaintiffs and the Class Members are entitled to legal and equitable relief against Apple, including damages, consequential damages, specific performance, attorney fees, costs of suit, and other relief as appropriate.

1

2

**SECOND CLAIM FOR RELIEF**

**BREACH OF IMPLIED WARRANTY**

**(By All Plaintiffs on Behalf of the Nationwide Class or, Alternatively, the California Class)**

3

4

94.     Plaintiffs incorporate by reference all allegations of the preceding paragraphs as though

5

fully set forth herein.

6

95.     Apple provided Plaintiffs and the Class Members with an implied warranty that the iPhones

7

and any parts thereof are merchantable and fit for the ordinary purposes for which they were sold.

8

However, the iPhones are not fit for their ordinary purpose as smartphones because they suffer from the

9

Audio IC Defect described herein. As such, the iPhones were incapable of making and receiving phone

10

calls, text messages, facilitating internet usage, and allowing the usage of apps.

11

96.     Apple impliedly warranted that the iPhones were of merchantable quality and fit for such

12

use. This implied warranty included, among other things, a warranty that the iPhones and their audio IC

13

chips manufactured, supplied, distributed, and/or sold by Apple were reliable and would not experience

14

premature failure when consumers used them in a reasonable and foreseeable manner.

15

97.     Contrary to the applicable implied warranties, the iPhones at the time of sale and thereafter

16

were not fit for their ordinary and intended purpose of providing Plaintiffs and the Class Members with

17

reliable smartphones.

18

98.     Apple's actions, as complained of herein, breached the implied warranty that the iPhones

19

were of merchantable quality and fit for such use.

20

**THIRD CLAIM FOR RELIEF**

**VIOLATIONS OF THE MAGNUSON-MOSS WARRANTY ACT**

**15 U.S.C. § 2301, *et seq.***

21

22

**(By All Plaintiffs on Behalf of the Nationwide Class or, Alternatively, the California Class)**

23

99.     Plaintiffs incorporate by reference all allegations of the preceding paragraphs as though

24

fully set forth herein.

25

100.    Congress enacted the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301, *et seq.*, in response

26

to widespread consumer complaints regarding misleading and deceptive warranties. The Act imposes civil

27

-19-

liability on any "warrantor" for failing to comply with any obligation under written and implied warranties. 15 U.S.C. § 2310(d)(1).

101.   This Court has jurisdiction over this matter under CAFA and can therefore assert alternative jurisdiction over the Plaintiffs' MMWA claims.

102.   The iPhones are consumer products as defined by 15 U.S.C. § 2301(1).

103.   Plaintiffs and the Class Members are "consumers" as defined by 15 U.S.C. § 2301(3).

104.   Apple is a warrantor and supplier as defined by 15 U.S.C. § 2301(4) and (5).

105.   Apple has failed to remedy the Audio IC Defect, despite Apple's knowledge and notice of the Audio IC Defect in the iPhones.

106.   Apple expressly warranted the iPhones would be free of defects.

107.   At the time Apple issued written warranties for the iPhones, Apple knew and had notice that the iPhones had the propensity to prematurely fail due to the Audio IC Defect. Apple's continued misrepresentations and omissions concerning the Audio IC Defect, as well as Apple's failure to abide by their own written and implied warranties, are "unfair methods of competition in or affecting commerce, and [are] unfair or deceptive acts or practices in or affecting commerce." Accordingly, Apple's behavior is unlawful under 15 U.S.C. §§ 2310(b), 45(a)(1).

108.   Plaintiffs and the Class Members seek to recover damages caused as a direct result of Apple's breach of their written and implied warranties and their deceitful and unlawful conduct. Damages include costs associated with repairing or replacing the iPhones with non-defective iPhones or other smartphones.

109.   The Act also provides for "other legal and equitable" relief. 15 U.S.C. § 2310(d)(1). Accordingly, Plaintiffs and the Class Members seek reformulation of Apple's written warranty to comport with Apple's obligations under the Act and with consumers' reasonable expectations. Additionally, Plaintiffs seek to enjoin Apple from acting unlawfully as further alleged, including discouraging Plaintiffs to seek all available remedies.

110.    The Act also provides for an award of costs and expenses, including attorneys' fees, to prevailing consumers in the Court's discretion. 15 U.S.C. § 2310(d)(2). Plaintiffs intend to seek such an award as prevailing consumers at the conclusion of the case.

**FOURTH CLAIM FOR RELIEF**

**VIOLATIONS OF THE SONG-BEVERLY CONSUMER WARRANTY ACT**

**Cal. Civ. Code § 1790,** *et seq.*

**(By All Plaintiffs on Behalf of the California Class)**

111.    Plaintiffs incorporate by reference all allegations of the preceding paragraphs as though fully set forth herein.

112.    Plaintiffs bring this claim on behalf of themselves and on behalf of the California Class Members against Apple.

113.    At all relevant times, Apple was the manufacturer, distributor, warrantor and/or seller of the iPhones. Apple knew or should have known of the specific use for which the iPhones were purchased.

114.    Apple provided Plaintiffs and the California Class Members with an implied warranty that the iPhones, and any parts thereof, are merchantable and fit for the ordinary purposes for which they were sold. The iPhones, however, are not fit for their ordinary purpose because, *inter alia*, the iPhones and their audio IC chips suffered from an inherent defect at the time of sale that causes the iPhone's audio IC chip to malfunction. As such, the iPhones were incapable of transmitting audio, understanding audio commands, rendering certain applications useless and causing severe issues with the iPhone's ability to reboot.

115.    The iPhones are not fit for the purpose of use as smartphones because of the Audio IC Defect.

116.    Apple impliedly warranted that the iPhones were of merchantable quality and fit for such use. This implied warranty included, *inter alia*, a warranty that the iPhones and their audio IC chips were manufactured, supplied, distributed, and/or sold by Apple were reliable for use as smartphones and would not prematurely and fail.

### FIFTH CLAIM FOR RELIEF
### VIOLATIONS OF THE CALIFORNIA CONSUMER LEGAL REMEDIES ACT ("CLRA")
### Cal. Civ. Code § 1750, *et seq.*
### (By All Plaintiffs on Behalf of the California Class)

117.    Plaintiffs incorporate by reference all allegations of the preceding paragraphs as though fully set forth herein.

118.    Apple is a person as that term is defined in California Civil Code § 1761(c).

119.    Plaintiffs and the members of the California Class are "consumers" as that term is defined in California Civil Code § 1761(d).

120.    Apple engaged in unfair and deceptive acts in violation of the CLRA by the practices described above, and by knowingly and intentionally concealing from Plaintiffs and California Class Members that the iPhones are defective. These acts and practices violate, at a minimum, the following sections of the CLRA:

(a)(2)  Misrepresenting the source, sponsorship, approval or certification of goods or services;

(a)(5)  Representing that goods or services have sponsorships, characteristics, uses, benefits or quantities which they do not have, or that a person has a sponsorship, approval, status, affiliation or connection which he or she does not have;

(a)(7)  Representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another; and

(a)(9)  Advertising goods and services with the intent not to sell them as advertised.

121.    Apple's unfair or deceptive acts or practices occurred repeatedly in Apple's trade or business and were capable of deceiving a substantial portion of the purchasing public.

122.    Apple knew that the iPhones were defective, prone to failing for their essential purpose as phones, and would become useless as a result of reasonable and foreseeable use by consumers.

123.    Apple was under a duty to Plaintiffs and the California Class Members to disclose the defective nature of the iPhones because:

a.    Apple was in a superior position to know the true state of facts about the Audio IC Defect in the iPhones;

b.   Plaintiffs and the California Class Members could not reasonably have been expected to learn or discover that the iPhones were defective and not in accordance with Apple's advertisements and representations;

c.   Apple knew that Plaintiffs and the California Class Members could not reasonably have been expected to learn or discover the Audio IC Defect in the iPhones; and

d.   Defendant actively concealed and failed to disclose the Audio IC Defect from Plaintiffs and the California Class.

124.   In failing to disclose the Audio IC Defect at the time of sale, Apple has knowingly and intentionally concealed material facts and breached its duty not to do so.

125.   The facts concealed or not disclosed by Apple to Plaintiffs and the California Class Members are material in that a reasonable consumer would have considered them to be important in deciding whether to purchase Apple's iPhones or pay a lesser price. Had Plaintiffs and the California Class known about the Audio IC Defect in the iPhones, they would not have purchased the iPhones or would have paid less for them.

126.   Concurrent with the filing of this complaint, Plaintiffs have provided Apple with notice of its violations of the CLRA pursuant to California Civil Code § 1782(a) and currently seek injunctive relief under the CLRA. Plaintiffs reserve the right to amend this Complaint to seek monetary damages under the CLRA pursuant to California Civil Code § 1782(d).

127.   Plaintiffs' declarations stating facts showing that venue in this District is proper pursuant to Cal. Civ. Code § 1780(c) are attached hereto as **Exhibit 1**.

128.   Plaintiffs and the other California Class members' injuries were proximately caused by Apple's fraudulent and deceptive business practices.

129.   Therefore, Plaintiffs and the other California Class Members are entitled to equitable relief under the CLRA.

## SIXTH CLAIM FOR RELIEF
## VIOLATIONS OF THE CALIFORNIA UNFAIR COMPETITION LAW ("UCL")
### Cal. Bus. & Prof. Code § 17200, *et seq.*

**(By All Plaintiffs on Behalf of the Nationwide Class or, Alternatively, the California Class)**

130.    Plaintiffs incorporate by reference all allegations of the preceding paragraphs as though fully set forth herein.

131.    The California Unfair Competition Law ("UCL") prohibits acts of "unfair competition," including any "unlawful, unfair or fraudulent business act or practice" and "unfair, deceptive, untrue or misleading advertising." Cal. Bus. & Prof. Code § 17200.

132.    Apple has engaged in unfair competition and unfair, unlawful or fraudulent business practices by the conduct, statements, and omissions described above, and by knowingly and intentionally concealing from Plaintiffs and the Class Members the Audio IC Defect (and the costs and diminished value of the iPhones as a result of Defendant's conduct). Defendant should have disclosed this information because it was in a superior position to know the true facts related to the Audio IC Defect, and Plaintiffs and Class Members could not reasonably be expected to learn or discover the true facts related to the Audio IC Defect.

133.    These acts and practices have deceived Plaintiffs and are likely to deceive the public. In failing to disclose the Audio IC Defect and suppressing other material facts from Plaintiffs and the Class Members, Defendant breached its duties to disclose these facts, violated the UCL, and caused injuries to Plaintiffs and the Class Members. The omissions and acts of concealment by Defendant pertained to information that was material to Plaintiffs and the Class Members, as it would have been to all reasonable consumers.

134.    The injuries suffered by Plaintiffs and the Class Members are greatly outweighed by any potential countervailing benefit to consumers or to competition, nor are they injuries that Plaintiffs and the Class Members should have reasonably avoided.

135.    Apple's acts and practices are unlawful because they violate California Civil Code §§ 1668, 1709, 1710, and 1750, *et seq.*, and California Commercial Code § 2313.

136.    Plaintiffs seek to enjoin further unlawful, unfair and/or fraudulent acts or practices by Defendant, to obtain restitutionary disgorgement of all monies and revenues generated as a result of such practices, and all other relief allowed under California Business & Professions Code § 17200.

**SEVENTH CLAIM FOR RELIEF**

**VIOLATIONS OF THE CALIFORNIA FALSE ADVERTISING LAW ("FAL")**

**Cal. Bus. & Prof. Code § 17500,** *et seq.*

**(By All Plaintiffs on Behalf of the Nationwide Class or, Alternatively, the California Class)**

137.    Plaintiffs incorporate by reference all allegations of the preceding paragraphs as though fully set forth herein.

138.    The California False Advertising Law ("FAL") states: "It is unlawful for any . . . corporation . . . with intent directly or indirectly to dispose of real or personal property . . . to induce the public to enter into any obligation relating thereto, to make or disseminate or cause to be made or disseminated . . . from this state before the public in any state, in any newspaper or other publication, or any advertising device, . . . or in any other manner or means whatever, including over the Internet, any statement . . . which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading." Cal. Bus. & Prof. Code § 17500.

139.    Apple caused to be made or disseminated throughout California and the United States, through advertising, marketing and other publications, statements that were untrue or misleading, and which were known, or which by the exercise of reasonable care should have been known to Apple, to be untrue and misleading to consumers, including Plaintiffs and the other Class Members.

140.    Apple has violated the FAL because the misrepresentations and omissions regarding the functionality of its iPhones as set forth in this Complaint were material and likely to deceive a reasonable consumer.

141.    Plaintiffs and the other Class Members have suffered an injury in fact, including the loss of money or property, as a result of Apple's unfair, unlawful, and/or deceptive practices. In purchasing their iPhones, Plaintiffs and the other Class Members relied on the misrepresentations and/or omissions of Apple with respect to the reliability of the iPhones. Defendant's representations were untrue because the iPhones were manufactured and sold with the Audio IC Defect. Had Plaintiffs and the other Class Members known this, they would not have purchased their iPhones and/or paid as much for them. Accordingly, Plaintiffs and the other Class Members overpaid for their iPhones and did not receive the benefit of their bargain.

142.   All of the wrongful conduct alleged herein occurred in the conduct of Apple's business.

143.   Plaintiffs, individually and on behalf of the other Class Members, request that this Court enter such orders or judgments as may be necessary to restore to Plaintiffs and the other Class Members any money Apple acquired by unfair competition, including restitution and/or restitutionary disgorgement, and for such other relief set forth below.

## EIGHTH CLAIM FOR RELIEF
### NEGLIGENT MISREPRESENTATION
**(By All Plaintiffs on Behalf of the Nationwide Class or, Alternatively, the California Class)**

144.   Plaintiffs incorporate by reference all allegations of the preceding paragraphs as though fully set forth herein.

145.   Apple had a duty to provide honest and accurate information to its customers so that customers could make informed decisions on the substantial purchase of a smartphone.

146.   Apple specifically and expressly misrepresented material facts to Plaintiffs and Class Members, as discussed above.

147.   Apple knew, or in the exercise of reasonable diligence, should have known, that the ordinary and reasonable consumer would be misled by Apple's misleading and deceptive advertisements.

148.   Plaintiffs and the Class Members justifiably relied on Apple's misrepresentations and have been damaged thereby in an amount to be determined at trial.

## NINTH CLAIM FOR RELIEF
### UNJUST ENRICHMENT
**(By All Plaintiffs on Behalf of the Nationwide Class or, Alternatively, the California Class)**

149.   Plaintiffs incorporate by reference all allegations of the preceding paragraphs as though fully set forth herein.

150.   Plaintiffs and the Class Members conferred a benefit on Apple by purchasing the iPhones.

151.   Apple had knowledge that this benefit was conferred upon it.

152.   Because of its wrongful acts and omissions, Apple charged a higher price for the iPhones than the iPhones' true value and Apple obtained money which rightfully belongs to Plaintiffs and the Class Members.

153.    Apple has been unjustly enriched at the expense of Plaintiffs and the Class and its retention of this benefit under the circumstances would be inequitable.

154.    Plaintiffs seek an order requiring Apple to make restitution to them and the other members of the Class.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs, on behalf of themselves and members of the proposed Nationwide Class and the California Class, respectfully request that this Court:

a.    Determine that the claims alleged herein may be maintained as a class action under Federal Rule of Civil Procedure 23, and issue an order certifying one or more classes as defined above;

b.    Appoint Plaintiffs as the representatives of the Nationwide Class or California Class and their counsel as Class counsel;

c.    Award all actual, general, special, incidental, statutory, punitive, and consequential damages and restitution to which Plaintiffs and the Class Members are entitled;

d.    Award pre-judgment and post-judgment interest on such monetary relief;

e.    Grant appropriate injunctive and/or declaratory relief, including, without limitation, an order that requires Apple to repair, recall, and/or replace the iPhones and to extend the applicable warranties to a reasonable period of time, or, at a minimum, to provide Plaintiffs and Class Members with appropriate curative notice regarding the existence and cause of the Audio IC Defect;

f.    Award reasonable attorneys' fees and costs; and

g.    Grant such further relief that this Court deems appropriate.

## JURY DEMAND

Plaintiffs demand a trial by jury on all issues so triable.

1  DATED: May 6, 2019

2                                                  **TYCKO & ZAVAREEI LLP**

3

4                                      By:    /s/*Hassan A. Zavareei*
                                             Hassan A. Zavareei (CA Bar No. 181547)
5                                            hzavareei@tzlegal.com
                                             Andrea R. Gold*
6                                            agold@tzlegal.com
                                             **TYCKO & ZAVAREEI LLP**
7                                            1828 L Street, NW, Suite 1000
                                             Washington, DC  20036
8                                            Telephone: (202) 973-0900
                                             Facsimile: (202) 973-0950

9                                            Annick Persinger (CA Bar No. 272996)
                                             apersinger@tzlegal.com
10                                           **TYCKO & ZAVAREEI LLP**
                                             1970 Broadway, Suite 1070
11                                           Oakland, CA 94612
                                             Telephone: (510) 254-6808
12                                           Facsimile: (202) 973-0950

13                                           Gregory F. Coleman*
                                             greg@gregcolemanlaw.com
14                                           Adam A. Edwards*
                                             adam@gregcolemanlaw.com
15                                           **GREG COLEMAN LAW**
                                             First Tennessee Plaza
16                                           800 S. Gay Street, Suite 1100
                                             Knoxville, TN 37929
17                                           Telephone: (865) 247-0080
                                             Facsimile: (865) 522-0049
18

19                                           Nick Suciu III*
                                             nicksuciu@bmslawyers.com
20                                           **BARBAT, MANSOUR & SUCIU PLLC**
                                             1644 Bracken Rd.
21                                           Bloomfield Hills, MI 48302
                                             Telephone: (313) 303-3472
22

23                                           Joseph G. Sauder*
                                             jgs@sstriallawyers.com
24                                           Matthew D. Schelkopf*
                                             mds@sstriallawyers.com
25                                           Joseph B. Kenney*
                                             jbk@sstriallawyers.com
26                                           **SAUDER SCHELKOPF LLC**
27

-28-
CLASS ACTION COMPLAINT

555 Lancaster Avenue
Berwyn, PA 19312
Telephone: (610) 200-0581
Facsimile: (610) 421-1326

*Pro Hac Vice Applications to be submitted*

*Attorneys for Plaintiffs and the Putative
Classes*

CLASS ACTION COMPLAINT