Gregory F. Coleman*
gcoleman@milberg.com
Adam A. Edwards*
aedwards@milberg.com
William A. Ladnier (CA Bar No. 330334)
wladnier@milberg.com
**MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN, PLLC**
800 S. Gay Street, Suite 1100
Knoxville, TN 37929
Tel: (865) 247-0080
Fax: (865) 522-0049

Hassan A. Zavareei (CA Bar No. 181547)
hzavareei@tzlegal.com
Andrea R. Gold*
agold@tzlegal.com
Allison Parr*
aparr@tzlegal.com
**TYCKO & ZAVAREEI LLP**
2000 Pennsylvania Avenue, NW, Suite 1010
Washington, DC  20006
Tel: (202) 973-0900
Fax: (202) 973-0950

* *Admitted pro hac vice*

*Attorneys for Plaintiffs
and Class Counsel*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LISA TABAK, DE'JHONTAI BANKS, MATTHEW WHITE, KELLY CAMELO-CENICOLA, NESTOR TRUJILLO, and CHRISTINE CLEMENCE, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>APPLE, INC.,<br><br>Defendant. | CASE NO. 4:19-CV-02455-JST<br><br>**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>**Judge:** Hon. Jon S. Tigar<br>**Date:** July 18, 2024<br>**Time**: 2:00 p.m.<br>**Place**: Courtroom 6, 2nd Floor<br>      1301 Clay Street, Oakland, CA 94612 |

1

1

## **NOTICE OF MOTION**

2   PLEASE TAKE NOTICE THAT on July 18, 2024 at 2:00 p.m., or as soon thereafter that

3 the matter may be heard, via video conference before the Honorable Jon S. Tigar, of the United

4 States District Court for the Northern District of California, Plaintiffs Lisa Tabak, De'Jhontai

5 Banks, Matthew White, Kelly Camelo-Cenicola, Nestor Trujillo, and Christine Clemence

6 ("Plaintiffs") will and hereby do move, pursuant to Federal Rule of Civil Procedure 23, this Court

7 for an Order (1) finally approving the Settlement settling their claims, both on behalf of themselves

8 and on behalf of a Settlement Class of similarly situated individuals; (2) certifying the Settlement

9 Class for settlement purposes only; (3) appointing Plaintiffs' counsel as Class Counsel and

10 Plaintiffs as Class Representatives; (4) directing payment to Settlement Class Members who

11 submitted valid payment information; and (5) directing that final judgment be entered herein. As

12 discussed more fully in the attached Memorandum of Points and Authorities, the Parties have

13 negotiated a Settlement that provides substantial compensation to consumers who allegedly

14 experienced certain audio issues with their iPhone 7 and iPhone 7 Plus devices, thereby providing

15 meaningful relief to Class Members for the alleged defect. Following the Court's Order granting

16 preliminary approval of the Settlement on November 21, 2023, notice was sent to Settlement Class

17 Members. Following a robust notice program, as of June 21, 2024, 114,684 Settlement Class

18 Members have submitted valid payment information. Furthermore, only 91 Settlement Class

19 Members opted out of the Settlement. Only 3 people submitted objections to the Settlement, but

20 as Class Counsel will explain in their Responses to these Objections, to be filed on July 11, 2024,

21 only 1 of these objectors qualifies as a Settlement Class Member, and the 2 other objectors do not

22 qualify as Settlement Class Members, thus their Objections should be considered invalid.

23 Moreover, none have substantive merit. Given the positive response by the Settlement Class, and

24 the valuable benefits the Settlement confers on Settlement Class Members, in this Motion Plaintiffs

25 respectfully request that the Court grant final approval of the Settlement, direct payment of

26

27

1   Settlement funds to those Settlement Class Members who submitted valid payment information,

2   and enter final judgment.

3

4   Dated: June 24, 2024                    /s/ William A. Ladnier

5                                           William A. Ladnier (CA Bar No. 330334)
                                            wladnier@milberg.com
6                                           Gregory F. Coleman*
                                            gcoleman@milberg.com
7                                           Adam A. Edwards
                                            aedwards@milberg.com
8                                           **MILBERG COLEMAN BRYSON
                                               PHILLIPS GROSSMAN, PLLC**
9                                           800 S. Gay Street, Suite 1100
                                            Knoxville, TN 37929
10                                          Tel: (865) 247-0080
                                            Fax: (865) 522-0049
11
                                            Andrea R. Gold*
12                                          agold@tzlegal.com
                                            Hassan A. Zavareei (CA Bar No. 181547)
13                                          hzavareei@tzlegal.com
                                            Allison Parr*
14                                          aparr@tzlegal.com
                                            **TYCKO & ZAVAREEI LLP**
15                                          2000 Pennsylvania Avenue NW, Suite 1010
                                            Washington, DC  20006
16                                          Tel: (202) 973-0900
                                            Fax: (202) 973-0950
17
                                            Annick Persinger (CA Bar No. 272996)
18                                          **TYCKO & ZAVAREEI LLP**
                                            1970 Broadway, Suite 1070
19                                          Oakland, CA 94612
                                            Tel: (510) 254-6808
20
                                            * *Admitted pro hac vice*
21
                                            *Attorneys for Plaintiffs*
22                                          *and Class Counsel*

23

24

25

26

27

PLAINTIFFS' NOTICE OF MOTION AND
MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT
CASE NO. 4:19-cv-02455-JST

**TABLE OF CONTENTS**

I.      INTRODUCTION AND SUMMARY OF ARGUMENT .......................................... 1

II.     THE SETTLEMENT ............................................................................................... 2

        A.      The Settlement Class............................................................................... 3

        B.      Benefits to the Settlement Class Members ............................................. 4

III.    SETTLEMENT ADMINISTRATION AND CLASS RESPONSE.......................... 5

        A.      Settlement Administration ....................................................................... 5

        B.      Class Notice ............................................................................................. 5

        C.      Settlement Class Members' Response ..................................................... 8

IV.     ATTORNEYS' FEES AND EXPENSES AND SERVICE AWARDS ................... 9

V.      *CY PRES* RECIPIENT .......................................................................................... 10

VI.     LEGAL STANDARD ........................................................................................... 11

VII.    ARGUMENT ........................................................................................................ 12

        A.      The Court Should Certify the Settlement Class for Settlement Purposes............. 12

                1.      The Settlement Class meets the requirements of Rule 23(a). .................. 13

                2.      The Settlement Class Meets the Requirements of Rule 23(b)(3). ............ 14

        B.      The Notice Plan Has Provided the Best Notice Practicable. ................................ 15

        C.      The Court Should Approve the Settlement Because It Is Fair, Reasonable, and Adequate. ..................................................................................... 16

                1.      The Settlement is the result of good faith, arm's-length negotiations before an experienced Mediator................................................ 16

                2.      The Settlement falls within the range of possible approval...................... 17

                        a.      The Strengths and Risks of Plaintiffs' Case and the Complexity and Likely Duration of Further Litigation ................ 17

                        b.      The Risk of Maintaining Class Action Status Through Trial................................................................................. 19

                        c.      The Amount Offered in Settlement................................................. 19

                        d.      Extent of Discovery Completed and Stage of Proceedings .......... 21

                        e.      Views of Class Counsel ................................................................. 21

                        f.      Overwhelmingly Positive Reception by Settlement Class Members ........................................................................ 21

                        g.      No Governmental Entity Has Objected to the Settlement ........... 22

                3.      The Settlement treats Settlement Class Members equitably.................... 23

i

4.    The Fee and Expense Award sought by Class Counsel is fair and
      reasonable. .............................................................................................. 24

VIII.    CONCLUSION ................................................................................................. 25

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Amchem Prods., Inc. v. Windsor*,
  521 U.S. 591 (1997) ............................................................................................... 12, 13

*Briseño v. Henderson*,
  998 F.3d 1014 (9th Cir. 2021) ....................................................................................... 17

*Bronson v. Samsung Elecs. Am., Inc.*, No. C 18-02300,
  2020 WL 1503662 (N.D. Cal. Mar. 30, 2020) ................................................................. 2

*Churchill Village, L.L.C. v. General Electric*,
  361 F.3d 566 (9th Cir. 2004) ................................................................................... 12, 15

*Class Plaintiffs v. City of Seattle*,
  955 F.2d 1268 (9th Cir. 1992) ....................................................................................... 12

*Del Toro Lopez v. Uber Techs., Inc.*, No. 17-cv-06255,
  2018 WL 5982506 (N.D. Cal. Nov. 14, 2018) ............................................................... 11

*Edwards v. Andrews*,
  846 F. App'x 538 (9th Cir. 2021) .................................................................................... 23

*Edwards v. Nat'l Milk Producers Fed'n*, No. 11-CV-04766,
  2017 WL 3623734 (N.D. Cal. June 26, 2017) ............................................................... 22

*Evon v. Law Offices of Sidney Mickell*,
  688 F.3d 1015 (9th Cir. 2012) ....................................................................................... 14

*G. F. v. Contra Costa Cnty.*, No. 13-cv-03667-MEJ,
  2015 WL 4606078 (N.D. Cal. July 30, 2015) ............................................................... 16

*Hamilton v. TBC Corp.*,
  821 F. App'x 720 (9th Cir. 2020) ................................................................................... 18

*Hanlon v. Chrysler Corp.*,
  150 F.3d 1011 (9th Cir. 1998) ........................................................................... 12, 14, 15

*In re Apple iPhone/iPod Warranty Litig.*, No. CV-10-01610,
  2014 WL 12640497 (N.D. Cal. May 8, 2014) ................................................................. 2

*In re Bluetooth Headset Prods. Liab. Litig.*,
  654 F.3d 935 (9th Cir. 2011) ......................................................................................... 17

*In re Lithium Ion Batteries Antitrust Litig.*, No. 13-MD-02420,
  2020 WL 7264559 (N.D. Cal. Dec. 10, 2020) ............................................................... 17

*In re MacBook Keyboard Litig.*, No. 5:18-cv-02813,
  2023 WL 3688452 (N.D. Cal. May 25, 2023) ........................................................ 20, 23

*In re Netflix Privacy Litig.*, No. 5:11-CV-00379,
  2013 WL 1120801 (N.D. Cal. Mar. 18, 2013) ............................................................... 19

*In re Nexus 6P Products Liability Litigation*, No. 17-cv-02185,
  2019 WL 6622842 (N.D. Cal. Nov. 12, 2019) .......................................................... 2, 23

*In re Online DVD-Rental Antitrust Litig.*,
  779 F.3d 934 (9th Cir. 2015) ......................................................................................... 22

iii

*In re Pac. Enters. Sec. Litig.*,
    47 F.3d 373 (9th Cir. 1995) ........................................................................................ 12
*In re TracFone Unlimited Serv. Plan Litig.*,
    112 F. Supp. 3d 993 (N.D. Cal. 2015) ........................................................................ 9
*In re Transpacific Passenger Air Transportation Antitrust Litig.*, No. 23-15118,
    2024 WL 810703 (9th Cir. Feb. 27, 2024) .................................................................. 9
*In re Volkswagen "Clean Diesel" Mktg., Sales Practices & Prod. Liab. Litig.*, No. 2672,
    2016 WL 4010049 (N.D. Cal. July 26, 2016) ....................................................... 12, 13
*J.L. v. Cissna*, No. 18-cv-04914-NC,
    2019 WL 415579 (N.D. Cal. Feb. 1, 2019) ................................................................ 13
*Keller v. Elec. Arts, Inc.*, No. 4:09-cv-1967,
    2015 WL 5005057 (N.D. Cal. Aug. 18, 2015) ........................................................... 15
*Kim v. Space Pencil, Inc.*, No. C 11-03796,
    2012 WL 5948951 (N.D. Cal. Nov. 28, 2012) ........................................................... 18
*Knapp v. Art.com, Inc.*,
    283 F. Supp. 3d 823 (N.D. Cal. 2017) ................................................................ 19, 23
*LaGarde v. Support.com, Inc.*, No. C 12-0609,
    2013 WL 1283325 (N.D. Cal. Mar. 26, 2013) ........................................................... 23
*Larsen v. Trader Joe's Co.*, No. 11-cv-05188,
    2014 WL 3404531 (N.D. Cal. July 11, 2014) .............................................................. 2
*Miller v. Ghirardelli Chocolate Co.*, No. 12-cv-04936,
    2015 WL 758094 (N.D. Cal. Feb. 20, 2015) ............................................................... 2
*Nat'l Rural Telecomm. Coop. v. DirecTV, Inc.*,
    221 F.R.D. 523 (C.D. Cal. 2004) ............................................................................... 21
*Noll v. eBay, Inc.*,
    309 F.R.D. 593 (N.D. Cal. 2015) ............................................................................... 22
*Officers for Just. v. Civ. Serv. Comm'n of City & Cnty. of San Francisco*,
    688 F.2d 615 (9th Cir. 1982) ..................................................................................... 17
*Phillips Petroleum Co. v. Shutts*,
    472 U.S. 797 (1985) ................................................................................................... 15
*Rael v. Children's Place, Inc.*, No. 3:16-cv-00370,
    2020 WL 434482 (S.D. Cal. Jan. 28, 2020) .............................................................. 22
*Rieckborn v. Velti PLC*, No. 13-cv-03889,
    2015 WL 468329 (N.D. Cal. Feb. 3, 2015) ............................................................... 12
*Rodriguez v. Hayes*,
    591 F.3d 1105 (9th Cir. 2010) ................................................................................... 13
*Rodriguez v. W. Publ'g Corp.*,
    563 F.3d 948 (9th Cir. 2009) ............................................................................... 19, 24
*Stonehocker v. Kindred Healthcare Operating LLC*, No. 19-CV-2494,
    2021 WL 1643226 (N.D. Cal. Apr. 27, 2021) ........................................................... 22
*Theodore Broomfield v. Craft Brew Alliance, Inc.*, No. 17-cv-01027,
    2020 WL 1972505 (N.D. Cal. Feb. 5, 2020) ....................................................... 21, 22
*Tyson Foods, Inc. v. Bouaphakeo*,
    577 U.S. 442 (2016) ................................................................................................... 14
*Van Bronkhorst v. Safeco Corp.*,
    529 F.2d 943 (9th Cir. 1976) ..................................................................................... 12

iv

*Villegas v. J.P. Morgan Chase & Co.*, No. CV 09-00261,
   2012 WL 5878390 (N.D. Cal. Nov. 21, 2012) ........................................................ 16
*Weeks v. Google LLC*, No. 5:18-cv-00801,
   2019 WL 8135563 (N.D. Cal. Dec. 13, 2019) ...................................................... 20
*Wolin v. Jaguar Land Rover N. Am., LLC*,
   617 F.3d 1168 (9th Cir. 2010) ............................................................. 13, 15

**<u>Statutes</u>**

28 U.S.C. § 1715 ................................................................................. 8

**<u>Rules</u>**

Fed. Civ. P. 23 .......................................................................... *passim*

PLAINTIFFS' NOTICE OF MOTION AND
MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT
CASE NO. 4:19-cv-02455-JST

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION AND SUMMARY OF ARGUMENT

Plaintiffs originally filed this proposed class action against Defendant Apple Inc., ("Apple") on May 6, 2019. Following approximately four years of vigorous litigation and discovery, the parties reached an agreement to resolve the claims raised in this Action (the "Settlement")[1]. The Settlement provides for a total fund of $35,000,000, providing between $50 to $349 to Settlement Class Members who paid Apple out-of-pocket for a repair or replacement ("OOP Payees") for certain alleged audio-related issues with their iPhone 7 or iPhone 7 Plus phones and up to $200 to Settlement Class Members who complained to Apple about such alleged audio-related issues but did not pay out-of-pocket to Apple for a repair or replacement ("Complainants"). *See* ECF No. 186.[2] The Settlement was reached after extensive litigation and arm's-length negotiations before an experienced mediator, Mr. Randall Wulff. Following preliminary approval of the Settlement, ECF No. 176, direct email and mail notice was sent to Settlement Class Members. Following an over-five-month long notice period, 114,684 Settlement Class Members submitted valid payment information. Of the over 1,649,497 Settlement Class Members,[3] only 91 opted out of the Settlement, and *only 1* objected to the Settlement. Weisbrot

---

[1] Unless otherwise specifically defined herein, all capitalized terms have the same meanings as those set forth in the Parties' Settlement Agreement. ECF No. 171-2.

[2] The Court preliminarily approved distribution, on a *pro rata* basis, of between $50 to $349 to OOP Payees and up to $125 to Complainants to Settlement Class Members who timely submitted their payment information. Preliminary Approval Order, ECF No. 176, ¶ 7. In order to ensure that the majority of Net Settlement Funds were distributed to Settlement Class Members, rather than a disproportionately large amount distributed to the *cy pres* recipient, the Parties jointly agreed to increase the distribution to Complainants to a maximum of $200. ECF No. 186 (granting revision).

[3] Plaintiffs originally represented that there were 2,030,595 Settlement Class Members, based on Apple's estimated class data showing unique complaints to Apple regarding the iPhone 7 and iPhone 7 Plus's alleged audio issues. Pls.' Mot. for Preliminary Approval, ECF No. 171, at 19. However, following review of the Class List by the Settlement Administrator, duplicate

Decl. ¶¶ 31-32.[4] The Settlement is fair, reasonable, and adequate, and provides meaningful relief to the Settlement Class, while balancing the risks and delays of continued, protracted litigation, including class certification briefing, expert reports, trial, and the potential for no recovery at all for Plaintiffs or the Settlement Class. Such recovery aligns with other consumer class action settlements in this District that have received final approval.[5] Based on an informed evaluation of the facts and governing legal principles, and given the decidedly positive response by Settlement Class Members to this Settlement, Plaintiffs respectfully request that the Court grant Final Approval of the Settlement.

## II.    THE SETTLEMENT[6]

The Settlement provides substantial, meaningful relief to current and former owners of the iPhones by compensating all who reported to Apple an alleged issue regarding the iPhone 7 and iPhone 7 Plus reflected in Apple's records as Sound-Speaker, Sound-Microphone, Sound – Receiver, Unexpected Restart / Shutdown, or Power On – Device Unresponsive, with higher

---

individuals and individuals with foreign addresses were removed, resulting in a "refined" total of 1,649,497 Settlement Class Members. Declaration of Steven Weisbrot ("Weisbrot Decl."), ¶ 10.

[4] Only 3 people in total objected to the Settlement. *See* ECF Nos. 179-181, 183. However, as Plaintiffs and Class Counsel will explain more fully in their Responses to Objections, only one of these Objections was raised by an individual who qualifies as Settlement Class Members and, moreover, none have merit. Thus, these Objections should be overruled. Plaintiffs and Class Counsel will file their Responses to Objections on or before the Court's July 11, 2024 deadline. Preliminary Approval Order, ¶ 16.

[5] *See, e.g.*, *Bronson v. Samsung Elecs. Am., Inc.*, No. C 18-02300, 2020 WL 1503662, at *2 (N.D. Cal. Mar. 30, 2020); *In re Nexus 6P Products Liability Litigation*, No. 17-cv-02185, 2019 WL 6622842, at *1-2 (N.D. Cal. Nov. 12, 2019); *Miller v. Ghirardelli Chocolate Co.*, No. 12-cv-04936, 2015 WL 758094 (N.D. Cal. Feb. 20, 2015); *Larsen v. Trader Joe's Co.*, No. 11-cv-05188, 2014 WL 3404531 (N.D. Cal. July 11, 2014); *In re Apple iPhone/iPod Warranty Litig.*, No. CV-10-01610, 2014 WL 12640497, at *3 (N.D. Cal. May 8, 2014).

[6] Plaintiffs do not repeat the factual or procedural background here, which they included previously in their Motion for Preliminary Approval. *See* ECF No. 171, at 2-3. However, for ease of reference, Plaintiffs repeat portions of the information provided about the Settlement, while including important additions and revisions. *See id.* at 3-8.

2

compensation to those who paid out of pocket to Apple for a repair or replacement. The Settlement Fund contains enough funds to ensure that Settlement Class Members receive full and fair relief.

## A.     The Settlement Class

The Settlement contemplates certification of the following Settlement Class for settlement purposes only:

> [I]ndividual persons who are United States residents and who own or owned an Apple iPhone 7 or 7 Plus and reported to Apple in the United States Covered Issues, including but not limited to those who paid Apple out of pocket for repairs or replacements for Covered Issues as reflected in Apple's records. The Settlement Class excludes Apple; any entity in which Apple has a controlling interest; Apple's directors, officers, and employees; Apple's legal representatives, successors, and assigns. Also excluded from the Settlement Class are all judicial officers assigned to this case as well as their staff and immediate families.  The Class Period shall be September 16, 2016, to January 3, 2023.

Order Granting Pls.' Mot. for Preliminary Approval of Class Action Settlement ("Preliminary Approval Order"), ECF No. 176, ¶ 5; Settlement Agreement ("SA"), ECF No. 171-2, ¶ 25.

"Covered Issues" are defined as "issues reported to Apple regarding the iPhone 7 and iPhone 7 Plus reflected in Apple's records as Sound-Speaker, Sound-Microphone, Sound – Receiver, Unexpected Restart / Shutdown, or Power On – Device Unresponsive." Preliminary Approval Order, ¶ 5; SA, ¶ 25.

The Settlement Class is more precisely defined than the classes set out in the operative complaint. ECF No. 67, ¶¶ 245-46 (Procedural Guidance for Class Action Settlements ("Guideline") 1(a)). The Settlement Class includes all individuals who owned an iPhone 7 or 7 Plus, allegedly experienced a Covered Issue, and contacted Apple regarding the Covered Issue. Purchasers of iPhone 7 or iPhone 7 Plus who did not experience any issue are not Settlement Class Members. *See* Guideline 1(c).

Plaintiffs narrowed the Settlement Class given the serious risk associated with litigating the claims of iPhone 7 and 7 Plus purchasers who never experienced the alleged audio issue. For example, at trial, Apple could argue before a jury that the iPhone owners who never experienced any alleged audio issue were never harmed—or that because a large majority of the iPhones did

not manifest any audio issue, there was no defect. In defining the Settlement Class to only include those individuals who alleged that they experienced an issue, these risks are alleviated. Balancing these risks with ensuring a recovery on behalf of the Settlement Class Members who experienced an alleged audio issue is fair and reasonable.

### B.     Benefits to the Settlement Class Members

Apple has provided $35,000,000 for the Settlement Fund to cover all Settlement Class Member payments, administrative expenses, any taxes owed upon the gross settlement amount (excluding taxes owed by any individual Settlement Class Counsel, Plaintiffs, or Settlement Class Members), any attorneys' fee and expense awards, and any class representative service awards. SA ¶ 14. While recognizing that the Settlement entitles Class Counsel to apply for reasonable fees and expenses, the outcome of that request will not impact the Settlement from becoming effective, and Apple reserved the right to object to or oppose Class Counsel's request for attorneys' fees and expenses, but did not do so.[7] Settlement Class Members who provide valid payment information (directing the settlement administrator as to whether they prefer to receive payment by physical check, electronic check or direct deposit, and providing the information necessary for their chosen payment method) will receive payment from the Settlement Fund. Any Settlement Class Member who paid any out-of-pocket expenses to Apple for a repair or replacement allegedly relating to a Covered Issue ("OOP Payee") and who submits valid payment information will receive, on a *pro rata* basis, a cash payment between $50 and $349, with all OOP Payees receiving the same amount. Preliminary Approval Order, ¶ 7; *see also* SA, § B.3. Any Settlement Class Member who did not pay out-of-pocket costs to Apple for repairs allegedly relating to a Covered Issue ("Complainant") and who submits valid payment information will receive, on a *pro rata* basis, a cash payment of up to $200, with all Complainants receiving the same amount. ECF No. 186. Settlement Class

---

[7] Class Counsel brought a separate Motion for Attorneys' Fees and Costs and Class Representative Service Awards on April 29, 2024. ECF No. 177. Apple did not oppose the motion, and the time to file such an opposition has now passed.

Members originally had until June 3, 2024, to submit their payment information to the Settlement Administrator. Preliminary Approval Order, ¶ 16. However, on June 5, 2024, the deadline for Settlement Class Members to submit their payment information was extended to July 3, 2024. ECF No. 182.[8]

Should any payments to Class Members fail or remain uncashed after 120 days, such funds will be used to pay any unanticipated costs of administration. *Id.* § B.7. If funds still remain after payment of unanticipated administrative costs, the remaining funds will be distributed to Girls Who Code as the *cy pres* recipient, subject to the Court's approval. Preliminary Approval Order, ¶ 7. Under no circumstances shall any settlement funds revert to Apple. SA, § B.7.

## III.   SETTLEMENT ADMINISTRATION AND CLASS RESPONSE

### A.   Settlement Administration

The Court approved the Parties' selection of Angeion Group ("Angeion") as the Settlement Administrator. Preliminary Approval Order, ¶ 6. Given that the deadline for Settlement Class Members has been extended to July 3, 2024, ECF No. 182, the total costs of notice and settlement administration are not yet final. *See* Weisbrot Decl. ¶ 33-34. Accordingly, Plaintiffs will file a supplement shortly after the submission deadline detailing the final costs of notice and settlement administration.

### B.   Class Notice

In accordance with the Court-approved Notice Plan, Angeion provided Email and mailed Postcard Notice to Settlement Class Members. *See* Weisbrot Decl. ¶¶ 12, 15; *id.*, Exs. B-C (copies of Email Notice and Postcard Notice). Angeion also made the Long Form Notice available to all Settlement Class Members on the Settlement Website, as well as providing a copy of the Long

---

[8] In the intervening period between June 3, 2024 (when the original submission deadline ended) and June 5, 2024 (when the Court extended the submission deadline to July 3, 2024), the Settlement Administrator continued to accept submissions by Settlement Class Members on a tentative basis. Following the Court's Order extending the deadline, ECF No. 182, the Settlement Administrator has incorporated all post-June 3, 2024 submissions, including these intervening submissions, in its tally of total submissions. Weisbrot Decl. at 7 n.3.

Form Notice to anyone who requested it through the Settlement's toll-free hotline. *Id.* ¶¶ 24, 28. The Notices informed Settlement Class Members of all relevant facts about the Settlement, including the benefits available under the Settlement, how to submit payment information in order to receive Settlement benefits, how to seek exclusion from or object to the Settlement, the deadlines for submitting payment information or to seek exclusion or file an objection, and information about the release of Settlement Class Members' future claims.

Angeion established a Settlement Website, at www.SmartPhoneAudioSettlement.com, on January 15, 2024. *Id.* ¶ 23. The Settlement Website provided information to Settlement Class Members about the Settlement in a user-friendly format and hosted copies of all the Notices, the Settlement Agreement, Court orders and case-related documents, a list of all relevant Settlement deadlines, and an online tool for Settlement Class Members to easily submit their payment information. *Id.* ¶¶ 23-24. The Settlement Website also provided Angeion's contact information, should Settlement Class Members wish to contact the Settlement Administrator with questions or concerns about the Settlement. *Id.* ¶ 23. As of June 21, 2024, the Settlement Website had received 1,218,980 visits by 967,972 unique users, totaling 10,461,918 page views. *Id.* ¶ 26. Angeion also established a toll-free hotline, available at 1-833-633-0343, which was accessible 24 hours a day, 7 days a week. *Id.* ¶ 27. The toll-free hotline utilized an interactive voice response system that could provide Settlement Class Members with responses to frequently asked questions and provide important information about the Settlement. *Id.* As of June 21, 2024, the toll-free hotline had received 18,885 calls, totaling 76,267 minutes. *Id.* ¶ 28.

Beginning on January 15, 2024, Angeion sent Email and mailed Postcard Notices to Settlement Class Members. Weisbrot Decl. ¶¶ 12, 15. On that date, Angeion sent Email Notices to 1,310,297 Settlement Class Members, whose validated email addresses appeared on the Class List. *Id.* ¶ 12. Of those Email Notices, 1,228,783 were delivered successfully (representing approximately 93.8% reach on initial dissemination), and 93,788 "bounced back" as undeliverable. *Id.* ¶ 13. Of these Settlement Class Members whose Email Notices were returned as undeliverable,

92,780 had corresponding mailing addresses, to which Postcard Notices were sent on February 14, 2024. *Id.* ¶¶ 13, 16. Following receipt of a supplemental list of Settlement Class Member contact information from Apple, Angeion sent Email Notices to 31,812 Settlement Class Members whose validated email addresses appeared on this supplemental list. *Id.* ¶¶ 8, 14. Of these supplementally disseminated Email Notices, 30,905 were delivered successfully (representing approximately 97.15% reach), and 907 "bounced back" as undeliverable. *Id.* ¶ 14.

Prior to disseminating Postcard Notices, Angeion reviewed the United State Postal Service's National Change of Address database to ensure Postcard Notices would be mailed to the most up-to-date mailing addresses available for Settlement Class Members. *Id.* ¶ 18. Angeion sent via United States first-class mail, with prepaid postage, Postcard Notices on January 15, 2024, to 250,7272 Settlement Class Members who appeared on the Class List with a complete mailing address but did not have a validated email address. *Id.* ¶¶ 7, 15. On March 18, 2024, Angeion also mailed Postcard Notices via the same means to 1,138 Settlement Class Members who appeared on the supplemental list of Settlement Class Members and who had a complete mailing address. *Id.* ¶ 17. If a Postcard Notice was returned as undeliverable with a forwarding address, Angeion then re-mailed the Postcard Notice to that forwarding address. *Id.* ¶ 19. If a Postcard Notice was returned as undeliverable without a forwarding address, Angeion undertook a reasonable address verification search ("skip trace") in an attempt to determine an updated address for a given Settlement Class Member. *Id.* 58,235 Postcard Notices were returned as undeliverable, and, of those, 31,722 were re-mailed to updated addresses (with 3,403 returning as undeliverable a second time). *Id.*

On April 17, 2024 (47 days before the initial June 3, 2024 deadline to submit payment information; 77 days before the extended July 3, 2024 submission deadline), Angeion sent Email Reminder Notices to 1,326,703 Settlement Class Members who had a valid email address but had not yet submitted a Payment Attestation Form. *Id.* ¶ 20; *id.*, Ex. D (copy of Reminder Email Notice). Following agreement by the Parties to ensure the maximum reach to Settlement Class

Members, on May 10, 2024 (24 days before the initial June 3, 2024 deadline to submit payment information; 54 days before the extended July 3, 2024 submission deadline), Angeion also sent Reminder Postcard Notices to 1,100,044 Settlement Class Members who had a complete mailing address but had not yet submitted a Payment Attestation Form. *Id.* ¶ 21; *id.*, Ex. E (copy of Reminder Postcard Notice).

Moreover, Angeion provided timely Class Action Fairness Act ("CAFA") notice, pursuant to 28 U.S.C. § 1715, on June 2, 2023, to the Attorneys General of all states and territories and the Attorney General of the United States. *Id.* ¶ 6; *id.*, Ex. A (copy of CAFA Notice).

## C.    Settlement Class Members' Response

Based on the dissemination of this Notice Plan, and following establishment of the Settlement Website, as of June 21, 2024, Angeion has received a total of 114,684 Payment Attestation Form submissions. *Id.* ¶ 30. Based on the total 1,649,497 Settlement Class Members,[9] this represents a 6.95% submission rate. *See id.* ¶¶ 10, 30; *see also* Joint Decl. of Class Counsel in Supp. of Pls.' Mot. for Final Approval of Class Action Settlement ("Joint Class Counsel Decl."), ¶ 47.[10]

The deadline for Settlement Class Members to submit a written request for exclusion from the Settlement or to object to the Settlement was June 3, 2024. Preliminary Approval Order, ¶¶ 8, 16; *see also* Weisbrot Decl. ¶¶ 31-32. Angeion received a total of 91 timely, valid requests for exclusion. Weisbrot Decl. ¶ 31. Angeion did not receive any objections to the Settlement. *Id.* ¶ 32.

---

[9] Following receipt of the Class List and supplemental Class data from Apple, Angeion analyzed the data and removed all individuals with foreign addresses and all duplicate individuals. Weisbrot Decl. ¶¶ 7-9. This results in a "refined final" Class List containing 1,649,497 unique Settlement Class Members. *Id.* ¶ 10.

[10] These Payment Attestation Forms are still subject to final audits for completeness, validity, and review for duplicate submissions. Weisbrot Decl. ¶ 30. Because the Court extended the deadline for Settlement Class Members to submit their payment information to July 3, 2024, ECF No. 182, Plaintiffs will file a supplement shortly after that date detailing the final tally of Settlement Class Members' validated submissions.

A total of 3 individuals timely submitted objections to the Court, but only 1 was submitted by a qualified Settlement Class Member. *See* ECF Nos. 179-181, 183.[11] Thus, in total, 91 Settlement Class Members have sought exclusion from the Settlement and only 1 Settlement Class Member has objected. These 92 individuals amount to approximately 0.0056% of the total 1,649,497 Settlement Class Members, following refinement of the Class List data. *See* Weisbrot Decl. ¶ 10.

## IV.    ATTORNEYS' FEES AND EXPENSES AND SERVICE AWARDS

Class Counsel have sought an attorneys' fee and costs award (in the total amount of $8,750,000) through a separate motion. ECF No. 177. Although it originally reserved the right to object or oppose such an award, Apple has done neither. As Class Counsel explains more fully in that motion, the requested attorneys' fees are reasonable and justified under either a percentage-of-the recovery analysis or a lodestar cross-check, and their requested costs are reasonable. *Id.* at 4-20. Class Counsel's requested attorneys' fees represent a 24.5% request, lower than the benchmark in this District, when compared to the total $35,000,000 common fund in this Settlement. ECF No. 177, at 6. As of April 26, 2024, shortly before filing that Motion, Class Counsel had amassed a total of 7,943 hours of time litigating this case, which amounted to a total lodestar of $4,680,669.95. *E.g.*, *id.* at 12; *see also* Joint Declaration of Class Counsel, ECF No. 177-1, ¶ 67. At that time, Class Counsel's lodestar represented 53.49% of the total requested $8,750,000 for both attorneys' fees and expenses, and a 1.87 multiplier. ECF No. 177, at 12, 18.

Since the filing of that motion, Class Counsel has continued to communicate with potential Settlement Class Members, with Angeion, and with Apple regarding the Settlement and settlement

---

[11] As Plaintiffs will explain more fully in their Responses to Objections to be filed on or before July 11, 2024, Preliminary Approval Order ¶ 16, two of the objectors are not Settlement Class Members, and thus, their Objections are invalid and should be overruled. *See In re Transpacific Passenger Air Transportation Antitrust Litig.*, No. 23-15118, 2024 WL 810703, at *1 (9th Cir. Feb. 27, 2024) (affirming that non-class member did not have standing to object to settlement); *In re TracFone Unlimited Serv. Plan Litig.*, 112 F. Supp. 3d 993, 1008 (N.D. Cal. 2015) (finding that objector "lacks standing to object to the proposed settlement because he is not a class member, and certainly is not an aggrieved class member"). The only Objection raised by a Settlement Class Member does not raise substantive concerns and should similarly be overruled.

administration. Further, Class Counsel prepared this Motion and worked closely with Angeion regarding the preparation of a declaration fully describing all steps taken to provide notice to Settlement Class Members and administer the Settlement. Through these efforts, Class Counsel have collectively expended 178.8 total hours between April 27, 2024, and June 21, 2024. Joint Class Counsel Decl. ¶ 57. When combined with the hours already expended throughout this litigation, this results in a total expenditure (as of the date of June 21, 2024) of 8,121.85 hours, representing a total lodestar of $4,820,585.65. *Id.* ¶ 58. The expenditure of this additional time was both reasonable and justified.[12] Class Counsel's updated total lodestar, as of June 21, 2024, represents 55% of the total requested $8,750,000 in both attorneys' fees and expenses and a 1.82 multiplier. *Id.* ¶ 60. For the reasons stated in their previous motion, ECF No. 177, Class Counsel's total expenditure of time throughout this litigation on behalf of Plaintiffs and the Class has been reasonable and justified, and Class Counsel ask that the Court grant the requested attorneys' fees and costs award in the amount of $8,750,000 and incorporate it into its final approval of the Settlement.

Through that motion, Class Counsel also sought class representative services awards (in the amount of $3,000 per named Plaintiff, for a total of $18,000). ECF No. 177, at 20-22. For the reasons stated in that motion, Class Counsel asks that the Court grant the requested class representative service awards and incorporate them into its final approval of the Settlement.

## V.    *CY PRES* RECIPIENT

Based upon the response rate by Settlement Class Members as of the date of this Motion, (and the rate of submissions by OOP Payee and Claimant Settlement Class Members), the finalized costs of settlement administration, and Class Counsel's requested attorneys' fees and expenses and

---

[12] Moreover, Class Counsel will expend additional time in continuing to administer the Settlement through the extended July 3, 2024 submission deadline; in preparing a supplement detailing the final Settlement data for the Court; in responding to Objections; and in preparing for and appearing at the Final Approval hearing on July 18, 2024. Joint Class Counsel Decl. ¶ 59. Although they will expend this time, Class Counsel does not intend to include the hours expended after June 21, 2024 in their calculation of lodestar or in their requested attorneys' fees and expenses. *Id.*

class representative service awards (if approved by the Court), a small portion of Net Settlement Funds may remain. The Parties have jointly proposed Girls Who Code as the *cy pres* recipient. SA § B.8. In its Preliminary Approval Order, the Court ordered that any remaining Net Settlement Funds "be distributed to the *cy pres* Recipient set forth in the Settlement Agreement and as approved by the Court." Preliminary Approval Order, ¶ 7. Girls Who Code is a national organization that works to diminish the gender gap in technological professions, to increase exposure to underrepresented minorities in the technological field, and to expand computer science curricula in schools. Girls Who Code has clubs throughout the country, including in California. Plaintiffs and Class Counsel do not have any pre-existing relationship with Girls Who Code, and Apple has previously partnered with Girls Who Code to support certain programming and has identified the organization as a *cy pres* recipient in previous settlements. *See* Joint Decl. of Class Counsel in Supp. of Mot. for Preliminary Approval, ECF No. 171-1, ¶ 26; *see also* Joint Class Counsel Decl. ¶ 50. Courts in this District have previously approved Girls Who Code as a *cy pres* recipient, distributing funds from class action settlements to the organization—including in a settlement involving Apple. *See, e.g.*, *Cameron v. Apple, Inc.*, No. 19-cv-3074, ECF No. 491 (June 10, 2022) (granting final approval of settlement with Girls Who Code established as a *cy pres* recipient); *see also Del Toro Lopez v. Uber Techs., Inc.*, No. 17-cv-06255, 2018 WL 5982506 (N.D. Cal. Nov. 14, 2018) (same). Plaintiffs now ask, given that a small remainder of Net Settlement Funds will likely remain following distribution to Settlement Class Members, that the Court confirm Girls Who Code as the *cy pres* recipient and order that the remainder of Net Settlement Funds be distributed to it.

## VI.    LEGAL STANDARD

In the Ninth Circuit, there is a "strong judicial policy that favors settlements" of class actions. *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992). "[T]here is an overriding public interest in settling and quieting litigation," and this is "particularly true in class action suits." *Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976). Recognizing that

"[p]arties represented by competent counsel" are "positioned . . . to produce a settlement that fairly reflects each party's expected outcome in [the] litigation," courts favor approval of settlements. *In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995).

Federal Rule of Civil Procedure 23(e) governs approval of class action settlements. At the final approval stage, the district court must determine whether the settlement is "fundamentally fair, adequate, and reasonable." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998) (internal citations and quotations omitted); *see also* Fed. Civ. P. 23(e)(2). In the Ninth Circuit, courts are guided by eight factors to aid in this determination:

> (1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the Settlement.

*Churchill Village, L.L.C. v. General Electric*, 361 F.3d 566, 575 (9th Cir. 2004). However, a court need not weigh every factor, and "different factors may predominate in different factual contexts." *Rieckborn v. Velti PLC*, No. 13-cv-03889, 2015 WL 468329, at *3 (N.D. Cal. Feb. 3, 2015) (citation omitted).

## VII.    ARGUMENT

### A.    The Court Should Certify the Settlement Class for Settlement Purposes.

Certification of a settlement class is a "two-step process." *In re Volkswagen "Clean Diesel" Mktg., Sales Practices & Prod. Liab. Litig.*, No. 2672, 2016 WL 4010049, at *10 (N.D. Cal. July 26, 2016) (citing *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 613 (1997)). First, the court must determine that the Settlement class satisfies the four requirements of Rule 23(a). *Id.* The court then must examine whether a "class action may be maintained under [Rule 23(b)]." *Id.* (citing *Amchem Prods.*, 521 U.S. at 613). Unlike other class actions, however, when presented with a class action settlement, the court need not consider manageability concerns. *Amchem*

*Prods.*, 521 U.S. at 620. The Court has already held that certification for settlement purposes was appropriate at preliminary approval. Preliminary Approval Order, ¶ 5. For the same reasons, the Court should certify the Settlement Class again and grant final approval.

### 1.    The Settlement Class meets the requirements of Rule 23(a).

The Settlement Class as defined is sufficiently numerous so as to make joinder impracticable. Fed. R. Civ. P. 23(a)(1). After Apple provided the Class List to the Settlement Administrator, Angeion removed duplicative records and excluded foreign individuals, which resulted in a total of 1,649,497 unique Settlement Class Members, including 1,555,382 Complainants and 94,115 OOP Payees. Weisbrot Decl. ¶¶ 7-10; id. at 3 n.1. Thus, the total Settlement Class, including the categories of Settlement Class Members, satisfies Rule 23(a)'s numerosity requirement.

Rule 23 commonality requires that there be "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). The commonality requirement should be "construed permissively," and is satisfied when class members share 'some . . . legal issues or a common core of facts.'" *J.L. v. Cissna*, No. 18-cv-04914, 2019 WL 415579, at *9 (N.D. Cal. Feb. 1, 2019) (quoting *Rodriguez v. Hayes*, 591 F.3d 1105, 1122 (9th Cir. 2010)). Here, whether the iPhone 7 and 7 Plus contained the alleged defect, whether Apple had knowledge of the alleged defect, and whether Apple had a duty to disclose the alleged defect are common questions affecting the putative class. Hence, commonality is satisfied.

Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class," and "assure[s] that the interest of the named representative[s] align[] with the interests of the class," *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1175 (9th Cir. 2010) (citation omitted). Here, all Plaintiffs' claims are typical of the Settlement Class Members' claims because all claims arise from the same course of Apple's conduct.

13

Courts employ a two-pronged approach to analyze adequacy under Federal Rule of Civil Procedure 23(a)(4), examining whether "the named plaintiffs and their counsel have any conflicts of interest with other class members" and whether "the named plaintiffs and their counsel [will] prosecute the action vigorously on behalf of the class." *Evon v. Law Offices of Sidney Mickell*, 688 F.3d 1015, 1031 (9th Cir. 2012) (quoting *Hanlon*, 150 F.3d at 1020). The Court has already found the named Plaintiffs and their Counsel are adequate representatives of the Settlement Class and appointed them as Class Representatives and Class Counsel. Preliminary Approval Order, ¶ 5. Neither the Class Representatives nor Class Counsel have any conflicts with the Settlement Class, and both have vigorously prosecuted this case on behalf of putative class members and will continue to do so through final approval and the close of this litigation. *See* Joint Decl. of Class Counsel in Supp. of Mot. for Preliminary Approval, ECF No. 171-1, ¶¶ 28-33.

### 2.     The Settlement Class Meets the Requirements of Rule 23(b)(3).

The Settlement Class meets the requirements of Rule 23(b)(3) because (1) common questions predominate over any questions affecting only individual members here, and (2) "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). This Court has already found that the Settlement Class meets this requirement, and there are no new developments that would change this determination. Preliminary Approval Order, ¶ 5. First, the common questions in this case can be resolved using the same evidence for all Settlement Class Members and are exactly the kind of predominant common issues that make class certification appropriate. *See Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 452 (2016) ("When one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3)."). Second, there are over 1.5 million Settlement Class Members with modest individual claims, most of whom likely lack the resources necessary to seek individual legal redress in a complex case against one of the world's largest tech companies. Thus, this Settlement is the most practical outcome for individuals with modest claims to recover without bearing expenses or other

risks of extensive litigation. *See Wolin*, 617 F.3d at 1175 ("Where recovery on an individual basis would be dwarfed by the cost of litigating on an individual basis, this factor weighs in favor of class certification.") (citations omitted). Thus, certification of the Settlement Class is appropriate in support of final approval.

**B.    The Notice Plan Has Provided the Best Notice Practicable.**

For a settlement class, the Court must "direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). Notice should "generally describe[] the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and come forward and be heard." *Churchill Village, L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004).

Following dissemination of all Notice in accordance with the Court-approved Notice Plan, and including dissemination of additional reminder Notices jointly approved by the Parties, Angeion estimates that Notice reached approximately 94.70% of Settlement Class Members. Weisbrot Decl. ¶ 29; *see also supra* Section III.B. (explaining all Notice efforts). This figure illustrates the wide, successful reach of the Notice Plan and aligns with those in other court-approved notice programs. *See, e.g., Keller v. Elec. Arts, Inc.*, No. 4:09-cv-1967, 2015 WL 5005057, at *5 (N.D. Cal. Aug. 18, 2015) (granting final approval and stating notice process with "almost 95%" reach rate provided "due and adequate notice to the Class"). Accordingly, the Court should find (1) the Notice Plan was reasonably calculated to give actual notice to Settlement Class Members of their rights to receive benefits from the Settlement, or otherwise how to exclude themselves from or object to the Settlement, and (2) the Notice Plan satisfied due process requirements and any other applicable requirements under federal law. *Hanlon*, 150 F.3d at 1024 (citing *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 810-13 (1985)).

Angeion's efforts throughout the Notice period effectuated the Notice Plan, as ordered by this Court in its Preliminary Approval Order, and were designed to ensure the widest possible reach

and provide the most practicable notice of the Settlement to Settlement Class Members. Angeion's efforts as Settlement Administrator, and the Notice as effectuated, support final approval.

### C. The Court Should Approve the Settlement Because It Is Fair, Reasonable, and Adequate.

The Settlement represents a fair, reasonable, and adequate resolution to this litigation, providing meaningful relief to the Settlement Class Members. The relevant considerations weigh in favor of finally approving the Settlement.

#### 1. The Settlement is the result of good faith, arm's-length negotiations before an experienced Mediator.

The Parties reached the Settlement following a day-long mediation session and extensive discussions thereafter overseen by Randall Wulff, an experienced litigator and mediator capable of analyzing the strengths and weaknesses of the parties' cases. Joint Class Counsel Decl. ¶¶ 17, 19. Mr. Wulff offered a reasonable, unbiased analysis of each party's arguments, claims, and defenses, helping the Parties to recognize the validity (and shortcomings) of their positions. Mr. Wulff ensured that the Parties' negotiations were conducted in good faith and at arm's length. After an approximately 10-hour mediation session and numerous discussions thereafter, the Parties reached an agreement to settle. *Id.* ¶ 19. "[T]he assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive." *See G. F. v. Contra Costa Cnty.*, No. 13-cv-03667-MEJ, 2015 WL 4606078, at *13 (N.D. Cal. July 30, 2015) (citation omitted); *Villegas v. J.P. Morgan Chase & Co.*, No. CV 09-00261, 2012 WL 5878390, at *6 (N.D. Cal. Nov. 21, 2012) (noting that private mediation "tends to support the conclusion that the settlement process was not collusive").

Moreover, none of the typical indicia of collusion—such as (i) plaintiff's counsel receiving a disproportionate distribution of the settlement, (ii) the inclusion of a "clear sailing provision, or (iii) the settlement agreement providing for reversion—exist here. *Briseño v. Henderson*, 998 F.3d 1014, 1026-27 (9th Cir. 2021); *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946-47 (9th Cir. 2011). Here, Class Counsel seek a 24.5% fee award, amounting to

16

a 1.82 lodestar multiplier, which is less than the typically approved benchmark in this District. *Compare* ECF No. 177, at 12, 18 *with* Joint Class Counsel ¶¶ 57-58, 60 (providing updated Class Counsel hours, lodestar, and multiplier); *see also supra* Section IV. There is also no "clear sailing" provision here, because any fees awarded will be paid from the common fund, not separately by Apple, and the Settlement Agreement does not include any provision wherein Apple agrees not to oppose the attorneys' fees request. *See, e.g.*, *In re Lithium Ion Batteries Antitrust Litig.*, No. 13-MD-02420, 2020 WL 7264559, at *15 (N.D. Cal. Dec. 10, 2020). And there is no reversionary component of the Settlement: following distribution on a *pro rata* basis of the net Settlement Funds to Settlement Class Members who timely submit their payment information, any remaining funds will be awarded to the *cy pres* recipient, Girls Who Code, rather than reverting to Apple. *See supra* Section V. The lack of any indicia of collusion and the Parties reaching Settlement through the aid of an experienced mediator substantially favor final approval.

### 2.    The Settlement falls within the range of possible approval.

It is axiomatic that "the very essence of a settlement is compromise, 'a yielding of absolutes and an abandoning of highest hopes.'" *Officers for Just. v. Civ. Serv. Comm'n of City & Cnty. of San Francisco*, 688 F.2d 615, 624 (9th Cir. 1982). The Settlement provides substantial monetary relief to the Class considering (1) the costs, risks, expenses, and delays of trial and appeal, (2) the effectiveness of the proposed distribution plan, and (3) the fair and explained terms of the substantial gross Settlement fund that will sufficiently pay for all of the settlement costs, including any award of attorneys' fees and expenses and award of class representative service awards, as approved by the Court. Fed. R. Civ. P. 23(e)(2)(C).

#### a.    *The Strengths and Risks of Plaintiffs' Case and the Complexity and Likely Duration of Further Litigation*

The Settlement provides substantial relief to the Class in the face of the inherent uncertainties of litigation. "The substantial and immediate relief provided to the Class under the Settlement weighs heavily in favor of its approval compared to the inherent risk of continued

17

1  litigation, trial, and appeal, as well as the financial wherewithal of the defendant." *Kim v. Space*
2  *Pencil, Inc.*, No. C 11-03796, 2012 WL 5948951, at *5 (N.D. Cal. Nov. 28, 2012).

3      This case presents significant risks to recovery. On the merits, Apple disputes all Plaintiffs'
4  claims. Since inception, Apple has denied that the iPhone 7 and 7 Plus contained any alleged
5  defect. *See generally* Answer, ECF No. 97. Apple also argued that Plaintiffs and all consumers of
6  the iPhone 7 and iPhone 7 Plus received the benefit of their bargain. *See, e.g.*, *id.* ¶¶ 32, 46, 63, 80,
7  96, 111, 123, 149. According to Apple, the challenged components and design are not deficient.
8  *See, e.g.*, *id.* ¶ 25. Further, Apple maintains that all its representations were true and denies that
9  Apple at any time acted in violation of any consumer protection law or inconsistent with its
10 warranties. *See, e.g.*, *id.* ¶¶ 264-271; 381-84; 388-401. Additionally, Apple denies that class
11 treatment is appropriate under the circumstances and will point to what it claims are individualized
12 issues. *See, e.g.*, *id.* ¶¶ 244-47.

13     There is meaningful risk that a factfinder could agree with Apple at trial. Indeed, consumer
14 class action trials are inherently risky. Seemingly meritorious class actions have recently gone to
15 trial in California, with judgments returned for defendants. *See e.g., Farar v. Bayer AG*, No. 14-
16 cv-4601 (N.D. Cal. 2017); *Allen v. Hyland's, Inc*., No. 12-cv-1150 (C.D. Cal. 2014); *cf. Racies v.*
17 *Quincy Bioscience, LLC*, No. 15-cv-292 (N.D. Cal. 2017) (declaring mistrial and decertifying
18 class).

19     Similarly, summary judgment is also not without risk, where Apple could analogize to the
20 Ninth Circuit's recent dismissal in *Hamilton v. TBC Corp.*, 821 F. App'x 720, 723 (9th Cir. 2020).
21 There, the Ninth Circuit held that plaintiffs were not able to pinpoint and prove a defect to support
22 their claims. Proving an actionable defect can be difficult even in strong cases. *Id.* Therefore, in
23 the face of additional months, if not years, of litigation, Plaintiffs must weigh the very real risk
24 that the Court—or a jury—could be unconvinced that a legitimate defect exists in the iPhones.

25     Accordingly, while Plaintiffs vigorously dispute Apple's contentions on the merits, the
26 risks of litigation weigh in favor of settlement. *See Knapp v. Art.com, Inc.*, 283 F. Supp. 3d 823,

27

18

832 (N.D. Cal. 2017) (approving settlement where "[c]ase law suggests that plaintiff would have faced challenges in continuing to litigate" and "unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results").

**b.**    *The Risk of Maintaining Class Action Status Through Trial*

The risk of maintaining class action status through trial supports final approval. Joint Class Counsel Decl. ¶¶ 33-34. A class has not been certified in this case, and Apple will oppose certification if the case proceeds. *See In re Netflix Privacy Litig.*, No. 5:11-CV-00379, 2013 WL 1120801, at *6 (N.D. Cal. Mar. 18, 2013); *see also* Answer, ECF No. 97, ¶¶ 244-47 (denying that class treatment is appropriate). Indeed, Apple would likely argue that individual questions predominate over common questions with regard to exposure, reliance, materiality, causation, and injury. Although Plaintiffs assert that certification for litigation is appropriate here, the risk remains that the Court could refuse to certify a class. In that event, putative class members would receive nothing. And even if the Court did certify a litigation class, Plaintiffs would still face potential review on appeal, and would need to prove their claims at trial, which carries serious expense and further delay—potentially delaying recovery for years. Likewise, Plaintiffs would continue to face the risk that a "district court may decertify a class at any time." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 966 (9th Cir. 2009). The Settlement allows Plaintiffs and Settlement Class Members to avoid these risks, additional expenses, and delays in favor of immediate recovery.

**c.**    *The Amount Offered in Settlement*

Plaintiffs and their counsel secured for the Settlement Class a gross Settlement fund of $35,000,000, which is reasonable in relation to potential trial damages for the Settlement Class.

As discussed above, after mediation with Mr. Wulff and analysis of the facts and risks, the Plaintiffs concluded that it was appropriate to define a Settlement Class of iPhone 7 and 7 Plus owners nationwide who allegedly experienced a manifestation of the Defect and who contacted Apple regarding the Covered Issues. Thus, the recovery under this Settlement is different than recovery at trial based on Plaintiffs' complaint. But settling on these bases avoids the more

significant risks associated with seeking certification of or trying claims by consumers who never experienced any alleged audio issues and who enjoyed full use of their iPhone.

The Settlement ensures payment of up to $349 through a straightforward process to any consumer who paid out-of-pocket expenses allegedly related to a Covered Issue. This figure is intended to compensate such consumers, because it is designed to track the average out-of-pocket expenses related to repairing or replacing an iPhone allegedly experiencing one of the Covered Issues. Apple's data shows that, on average, following alleged manifestation, customers paid $193 in out-of-pocket expenses to Apple for repairs or replacements allegedly related to the Covered Issues. Additional benefits are reserved for those who contacted Apple allegedly regarding a Covered Issue but did not pay for repairs or replacements. These consumers—considered "Complainants" under the Settlement—may receive up to $200. *See* ECF No. 186.

This tiered allocation plan ensures that consumers are reasonably compensated for Covered Issues they allegedly experienced with their iPhones and, where applicable, their out-of-pocket payments. The plan also reasonably compares to any recovery that could be awarded to compensate for Covered Issues they allegedly experienced without related out-of-pocket costs. The Settlement benefits that will be paid to OOP Payees are expected to equal or exceed the average costs paid by them to Apple related to Covered Issues. This compares favorably to other settlements in this Circuit that have received final approval. *See, e.g.*, *In re MacBook Keyboard Litig.*, No. 5:18-cv-02813, 2023 WL 3688452, at *13 (N.D. Cal. May 25, 2023) (granting final approval and finding that "Class Counsel achieved excellent results for the class" where the settlement fund represented approximately 9% to 28% of the total estimated damages); *Weeks v. Google LLC*, No. 5:18-cv-00801, 2019 WL 8135563, at *14 (N.D. Cal. Dec. 13, 2019) (settlement fund represented approximately 38% of the maximum class-wide damages); *Theodore Broomfield v. Craft Brew Alliance, Inc.*, No. 17-cv-01027, 2020 WL 1972505, at *9 (N.D. Cal. Feb. 5, 2020) (granting final approval where per-unit monetary relief represented a 12.7% price premium per product).

**d.** *Extent of Discovery Completed and Stage of Proceedings*

The Parties have been engaged in discovery since 2021, and the Parties have completed document production and review (with hundreds of thousands of pages produced and reviewed). *See* Joint Class Counsel Decl. ¶ 9. Further, all of the named Plaintiffs had been deposed at the time the Parties engaged in the mediation that resulted in the Settlement. *See id.* ¶ 12. Plaintiffs and Class Counsel have conducted sufficient discovery, including from Apple and third-party retailers and through work with experts, to permit Class Counsel, the Class Representatives, and the Court to intelligently and fairly evaluate the fairness and adequacy of the Settlement. *See id.* ¶¶ 9-16. This favors final approval.

**e.** *Views of Class Counsel*

Class Counsel, who are experienced in consumer class action litigation, believe the Settlement represents an outstanding recovery for the Settlement Class given the risks of continuing the litigation. *Id.* ¶¶ 33-36. "Great weight is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation." *Nat'l Rural Telecomm. Coop. v. DirecTV, Inc.*, 221 F.R.D. 523, 528 (C.D. Cal. 2004).

**f.** *Overwhelmingly Positive Reception by Settlement Class Members*

Following a Notice and submission period that lasted from January 15, 2024, and continues until July 3, 2024, *see* Weisbrot Decl. ¶ 12; ECF No. 182, there has been a positive reception to the Settlement by Settlement Class Members. As of the date of this Motion, 114,684 total Settlement Class Members have participated in the Settlement by submitting their payment information. Weisbrot Decl. ¶ 30. This represents a 6.95% submission rate, compared to the 1,649,497 total Settlement Class Members (following removal of duplicate and foreign Settlement Class Members included on the Class List). *See id.* ¶ 10. Class Counsel believes this number and rate will continue to increase until the period for submissions officially closes on July 3, 2024. This response rate is typical for a consumer class action and supports final approval. *See, e.g., In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 944-45 (9th Cir. 2015) (affirming approval of settlement where less than 3.4% of class member filed claims); *Rael v. Children's Place, Inc.*,

21

No. 3:16-cv-00370, 2020 WL 434482, at *9 (S.D. Cal. Jan. 28, 2020) (noting that "consumer class actions tend to result in claims rates in the low single digits"); *Broomfield*, 2020 WL 1972505, at *7 (approving settlement with response rate of "about two percent"); *see also* Final Approval Guideline (1).

Moreover, of these 1,649,497 total Settlement Class Members, 91 have sought exclusion from the Settlement, and only 3 individuals—only 1 of whom is even a Settlement Class Member—have submitted (meritless) objections to the Settlement. Weisbrot Decl. ¶¶ 10, 27-28. These 94 individuals amount to an incredibly low 0.0057% (0.0055% opt-out and 0.0002% objection rates) of the total Settlement Class Members. When including only the single objection raised by a qualifying Settlement Class Member (which Plaintiffs and Class Counsel maintain lacks substantive merit), this figure drops further to 0.0056%. Thus, the overall perception of the Settlement by Settlement Class Members has been overwhelmingly positive. *Stonehocker v. Kindred Healthcare Operating LLC*, No. 19-CV-2494, 2021 WL 1643226, at *5 (N.D. Cal. Apr. 27, 2021) (finding "[t]he reaction of the class was overwhelmingly positive" where "the Court received only three opt-outs and no objections"); *see also Noll v. eBay, Inc.*, 309 F.R.D. 593, 608 (N.D. Cal. 2015) ("[T]he fact that the overwhelming majority of the class willingly approved the offer and stayed in the class presents at least some objective positive commentary as to its fairness"). This "strongly favors final approval." *Edwards v. Nat'l Milk Producers Fed'n*, No. 11-CV-04766, 2017 WL 3623734, at *2, *8 (N.D. Cal. June 26, 2017) (factor favored approval where over 307,000 class members had submitted claims yet "only eight objections and one request for exclusion were received out of the millions of class members receiving notice."), *aff'd sub nom., Edwards v. Andrews*, 846 F. App'x 538 (9th Cir. 2021); *see also Knapp v. Art*, 283 F. Supp. 3d 823, 833-34 (N.D. Cal. 2017) ("A court may properly infer that a class action settlement is fair, adequate, and reasonable when few class members object to it.").

**g.**   *No Governmental Entity Has Objected to the Settlement*

The Settlement Administrator sent CAFA notice on June 2, 2023, to the Attorneys General of all states and territories and to the Attorney General of the United States. Weisbrot Decl. ¶ 6.

To date, no governmental entity has objected to the Settlement. This further supports final approval of the Settlement. *See LaGarde v. Support.com, Inc*., No. C 12-0609, 2013 WL 1283325, at *7 (N.D. Cal. Mar. 26, 2013) (noting that CAFA presumes that, once put on notice, state or federal officials will raise any concerns that they may have during the normal course of the class action settlement procedures").

### 3.      The Settlement treats Settlement Class Members equitably.

The Settlement provides benefits to all Settlement Class Members who submit valid payment information, without any preferential treatment of Class Representatives or any segment of the Settlement Class. *See* Fed. R. Civ. P. 23(e)(2)(D). Specifically, all Settlement Class Members who submit valid payment information will receive cash payments that are proportionate to the type of injury allegedly suffered. OOP Payees will be paid between $50 and $349, while Complainants—who did not pay any out-of-pocket expenses allegedly due to a Covered Issue—will receive up to $200. *See* ECF No. 186. Each OOP Payee will receive the same amount under the Settlement as other OOP Payees, and each Complainant will receive the same amount as other Complainants. This plan of allocation protects the interests of all parties by directing relief to the most significantly impacted Settlement Class Members—awarding more to OOP Payees, while also paying Complainants a very significant sum. *See In re MacBook Keyboard Litig.*, 2023 WL 3688452, at *3-4 (finally approving settlement that "provide[d] three payment tiers, or three groups, for eligible Settlement Class Members"); *see also In re Nexus 6P Prod. Liab. Litig.*, 2019 WL 6622842, at *9 (finally approving settlement that "divide[d] claimants into different groups based on the relative size of their potential claims and distributes funds based on these groups").

Class Counsel has also applied for $3,000 class representative service awards for each named Plaintiff (totaling $18,000), based on their dedication to and time expended during this litigation and in furtherance of putative class members' interests. *See* Mot. for Attorneys' Fees and Costs and Class Representative Service Awards, ECF No. 177, at 20-22. Such service awards "are fairly typical in class action cases" and "are intended to compensate class representatives for work

done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 958-59 (9th Cir. 2009). For the reasons stated in that Motion, ECF No. 177, Class Counsel believes that the Court should grant each named Plaintiff a $3,000 service award. Notably, such a service award, if awarded here, would not constitute preferential treatment. Plaintiffs were not promised that they would receive such an award for their participation in this litigation, and their agreement to serve as class representatives was not conditioned on receiving such an award. *See* Joint Decl. of Class Counsel in Supp. of Mot. for Preliminary Approval, ECF No. 171-1, ¶ 34. If granted, such an award would be offered for the significant time the Class Representatives expended in this litigation, working tirelessly on behalf of the Class; it would be separate from and not replace their recovery as Settlement Class Members. *See id.* ¶¶ 28-33. This factor also favors final approval.

### 4. The Fee and Expense Award sought by Class Counsel is fair and reasonable.

Class Counsel moved separately for $8,750,000 in attorneys' fees and expenses. ECF No. 177; *see also supra* Section IV. As explained more fully in that motion and above, Class Counsel's requested attorneys' fees and expenses are fair, reasonable, and justified. Class Counsel's requested attorneys' fees represent a 24.5% request, and their total lodestar as of April 26, 2024 represented a 1.87 multiplier. ECF No. 177, at 6, 12, 18. Since that date, Class Counsel have expended additional time in overseeing the administration of this Settlement, in drafting this Motion, and will spend additional time responding to Objections and preparing for the Final Approval Hearing. As of June 21, 2024, Class Counsel have expended 178.8 total hours, amounting to an additional lodestar of $139,915.70 between April 27, 2024, and June 21, 2024. Joint Class Counsel Decl. ¶ 57. In total, for the full litigation, as of June 21, 2024, Class Counsel have expended 8,121.85 hours, representing a total lodestar of $4,820,585.65. *Id.* ¶ 58. This total lodestar represents 55% of the total requested $8,750,000 in both attorneys' fees and expenses and

a 1.82 multiplier. *Id.* ¶ 60. As noted, Class Counsel will continue to expend time following June 21, 2024 and the filing of this motion, including continuing to oversee administration of the Settlement, responding to Objections, filing a supplement regarding the final Settlement Class data, preparing for and attending the Final Approval Hearing, and overseeing distributions to the Settlement Class. *Id.* ¶ 59. Class Counsel do not intend to include any time expended on these further efforts in their calculated lodestar, which, if included, would further reduce the multiplier. *Id.* This highlights the inherent fairness and reasonableness of the requested fee and expense award.

## VIII.  CONCLUSION

For the reasons stated above, Plaintiffs respectfully request that the Court (1) finally approve the Settlement; (2) affirm its conditional certification of the Settlement Class; (3) confirm its appointment of Class Counsel and Plaintiffs as Class Representatives; (4) retain jurisdiction over this matter to resolve issues related to interpretation, administration, implementation, and enforcement of the Settlement; and (5) enter final judgment dismissing the Action.


Dated: June 24, 2024

/s/ *William A. Ladnier*
William A. Ladnier (CA Bar No. 330334)
wladnier@milberg.com
Gregory F. Coleman*
gcoleman@milberg.com
Adam A. Edwards
aedwards@milberg.com
**MILBERG COLEMAN BRYSON**
  **PHILLIPS GROSSMAN, PLLC**
800 S. Gay Street, Suite 1100
Knoxville, TN 37929
Tel: (865) 247-0080
Fax: (865) 522-0049

Andrea R. Gold*
agold@tzlegal.com
Hassan A. Zavareei (CA Bar No. 181547)
hzavareei@tzlegal.com
Allison Parr*
aparr@tzlegal.com
**TYCKO & ZAVAREEI LLP**
2000 Pennsylvania Avenue NW, Suite 1010
Washington, DC  20006

25

Tel: (202) 973-0900
Fax: (202) 973-0950

Annick Persinger (CA Bar No. 272996)
**TYCKO & ZAVAREEI LLP**
1970 Broadway, Suite 1070
Oakland, CA 94612
Tel: (510) 254-6808

*\* Admitted pro hac vice*

*Attorneys for Plaintiffs
and Class Counsel*

## CERTIFICATE OF SERVICE

I, William A. Ladnier, hereby certify that on June 24, 2024, I caused a true and correct copy of the foregoing Plaintiffs' Motion for Final Approval of Class Action Settlement to be served upon the following by electronic mail:

Arturo J. González
agonzalez@mofo.com
Penelope A. Preovolos
ppreovolos@mofo.com
Alexis A. Amezcua
aamezcua@mofo.com
Camila A. Tapernoux
ctapernoux@mofo.com
Ashley Quinn
aquinn@mofo.com
Zachary Maldonado
zmaldonado@mofo.com
**MORRISON & FOERSTER LLP**
425 Market Street
San Francisco, CA 94105-2482
Tel: (415) 268-7000
Fax: (415) 268-7522


/s/ *William A. Ladnier*
William A. Ladnier

PLAINTIFFS' NOTICE OF MOTION AND
MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT
CASE NO. 4:19-cv-02455-JST