1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

LISA TABAK, DE'JHONTAI
BANKS, MATTHEW WHITE, KELLY
CAMELO-CENICOLA, NESTOR
TRUJILLO, and CHRISTINE CLEMENCE,
on behalf of themselves and all others
similarly situated,

                                    Plaintiffs,

v.

APPLE INC.,

                                    Defendant.

CASE NO. 4:19-CV-02455-JST

**[PROPOSED] ORDER GRANTING
FINAL APPROVAL OF CLASS
ACTION SETTLEMENT**

**Judge**: Hon. Jon S. Tigar
**Date**: July 18, 2024
**Time**: 2:00 p.m.
**Place**: Courtroom 6, 2nd Floor
1301 Clay Street, Oakland, CA 94612

On July 18, 2024, the Court held a Final Fairness hearing on Plaintiffs Lisa Tabak, De'Jhontai Banks, Matthew White, Kelly Camelo-Cenicola, Nestor Trujillo, and Christine Clemence's Motion for Final Approval of Class Action Settlement ("Final Approval Motion"), as well as Plaintiffs' Motion for Attorneys' Fees and Costs and Class Representative Service Awards ("Motion for Fees"). Having considered both Motions, all of the documentation submitted with the Motions including but not limited to the declarations of Plaintiffs' Counsel, arguments of counsel, terms of the Settlement Agreement and the effectuation of the class Notice, as well as the record in this case, and based on the reasons set forth herein, the Court GRANTS Plaintiffs' Final Approval Motion and GRANTS Plaintiffs' Motion for Fees in their entirety as outlined herein.

## I.    BACKGROUND

Plaintiffs filed their original Complaint on May 6, 2019. ECF No. 1. Following an amendment and full briefing on Defendant Apple Inc.'s ("Apple") motion to dismiss the complaint, the Court granted partial dismissal with leave to amend. ECF No. 62. Plaintiffs filed the operative Second Amended Complaint on February 20, 2020. ECF No. 67. Following further briefing on another motion to dismiss, the Court dismissed several claims with prejudice and left intact certain express warranty claims, implied warranty claims under the Song-Beverly Consumer Warranty Act, various state consumer protection claims, and common law fraud and negligent misrepresentation claims. ECF No. 90.

The Parties engaged in significant discovery, issuing and responding to multiple sets of requests for production, interrogatories, and requests for admission. Joint Decl. of Class Counsel in Supp. of Pls.' Mot. for Final Approval of Class Action Settlement ("Joint Class Counsel Decl.") ¶¶ 9-16. Apple produced, and Class Counsel reviewed, hundreds of thousands of pages of documents. *Id.* ¶ 9. Plaintiffs requested and reviewed documents relating to third-party sales of the iPhones. *Id.* Apple deposed all named Plaintiffs. *Id.* ¶ 12. Further, the Parties have met and conferred extensively regarding discovery and testing of the iPhones, and, following a joint discovery letter and conference with the Court, they engaged a neutral expert to accomplish some

of this testing. *See* ECF No. 140; *see also* Joint Class Counsel Decl. ¶ 14. The Court set regular case management conferences for the Parties to discuss discovery, case status, and mediation. *See* ECF Nos. 94, 115, 117, 156.

At the Court's request, the Parties engaged neutral mediator Randall Wulff to conduct a mediation on November 2, 2022. Joint Class Counsel Decl. ¶ 19. With Mr. Wulff's aid, the Parties reached an agreement to settle. *Id.* Since that mediation, the parties continued to discuss and finalized the settlement terms, and they executed the Settlement Agreement on May 25, 2023. *Id.* ¶ 20.

On May 25, 2023, Plaintiffs filed a motion seeking preliminary approval, which this Court granted on November 21, 2023, ECF No. 176. Now before the Court is Plaintiffs' Motion for Final Approval. Plaintiffs and Class Counsel previously filed their Motion for Attorneys' Fees and Costs and Class Representative Service Awards on April 29, 2024, ECF No. 177.

## II.   DISCUSSION

### A.   SETTLEMENT CLASS DEFINITION

As proposed and preliminarily approved, the "Settlement Class" means Settlement Class as defined in the Settlement Agreement: "All individual persons who are United States residents and who own or owned an Apple iPhone 7 or 7 Plus and reported to Apple in the United States Covered Issues, including but not limited to those who paid Apple out of pocket for repairs or replacements for Covered Issues as reflected in Apple's records." Settlement Agreement ¶ 25.

The Settlement Agreement defines "Covered Issues" as "issues reported to Defendant Apple Inc. regarding the iPhone 7 and iPhone 7 Plus reflected in Apple's records as Sound-Speaker, Sound-Microphone, Sound – Receiver, Unexpected Restart / Shutdown, or Power On – Device Unresponsive." *Id.*

Excluded from the Settlement Class are: (i) Defendant Apple Inc.; (ii) any entity in which Apple Inc. has a controlling interest; (iii) Apple Inc.'s directors, officers, and employees; (iv)

2

[Proposed] Order Granting Final Approval of Class Action Settlement and
Plaintiffs' Motion for Attorneys' Fees and Costs and Class Representative Service Awards
Case No. 4:19-cv-02455-JST

Apple Inc.'s legal representatives, successors, and assigns; and (v) all judicial officers assigned to this case, their staff, and their immediate families. *Id*.

The Class Period shall be from September 16, 2016, to January 3, 2023. *Id*.

There are approximately 1,649,497 Settlement Class members, a number confirmed by the Settlement Administrator to remove duplicate individuals and individuals with foreign addresses. Weisbrot Decl. ¶¶ 7-10.

### B.     <u>TERMS OF SETTLEMENT</u>

For the purposes of this Final Approval Order and Final Judgment ("Order"), the Court adopts all defined terms as set forth in the Settlement Agreement.

**Monetary Relief.** Under the terms of the Settlement Agreement, Apple will provide $35,000,000 for the Settlement Fund to cover all Settlement Class Member payments, administrative expenses, any taxes owed upon the gross settlement amount (excluding taxes owed by any individual Settlement Class Counsel, Plaintiffs, or Settlement Class Members), any attorneys' fee and expense awards, and any class representative service awards. Settlement Agreement ¶ 14. Any Settlement Class Member who paid any out-of-pocket expenses to Apple for a repair or replacement allegedly relating to a Covered Issue ("OOP Payee") and who submits valid payment information will receive a cash payment between $50 and $349, with all OOP Payees receiving the same amount. *Id.*, § B.3. Any Settlement Class Member who did not pay out-of-pocket costs to Apple for repairs allegedly relating to a Covered Issue ("Complainant") and who submits valid payment information will receive a cash payment of up to $200. *Id.*

This framework, which has been agreed to jointly by the Parties, *see* Joint Stip., ECF No. 185, modifies the monetary relief included in the Settlement Agreement and preliminarily approved by the Court. The monetary relief preliminarily approved by the Court was as follows:

> Each OOP Payee Settlement Class Member who submits valid payment information shall be provided with an equal *pro rata* share of the Net Settlement Fund, up to $349, but no less than $50. Complainant Settlement Class Members include those Settlement Class Members who complained to Defendant about allegedly experiencing a Covered Issue, but who did not pay out of pocket to Defendant for a repair or replacement of that alleged issue. Each Complainant

<div align="center">3</div>

Settlement Class Member who submits valid payment information shall be provided with an equal *pro rata* share of the Net Settlement Fund, up to $125, but no higher than 75% of the *pro rata* share to be paid to each OOP Payee Settlement Class Member. The actual amount provided to each Settlement Class Member who submits valid payment information may be increased or decreased on a *pro rata* basis based on the size of the Net Settlement Fund and the number of Settlement Class Members who submit valid payment information, subject to the allocation plan described above and in the Settlement Agreement.

Preliminary Approval Order, ECF No. 176, ¶ 7. This modified framework revises the payments to Complainant Settlement Class Members only (increasing payments, on a *pro rata* basis, to Complainant Settlement Class Members from "up to $125, but no higher than 75% of the *pro rata* share to be paid to each OOP Payee Settlement Class Member" to "up to $200") and is designed to ensure that as much of the Net Settlement Fund as possible is distributed to Settlement Class Members, rather than a disproportionately large amount being distributed to the *cy pres* recipient. The Court granted the Joint Stipulation modifying this framework on June 24, 2024. ECF No. 186.

**Attorneys' Fees, Litigation Expenses, and Service Award.** Under the Settlement Agreement, Class Counsel seeks up to twenty-five percent (25%) of the Settlement Amount, or $8,750,000, inclusive of costs and expenses incurred by Class Counsel, which are currently calculated at $175,143.81. The Settlement Agreement also includes a provision for settlement administration costs to be paid out of the Settlement Fund. Lastly, the Settlement Agreement provides for service awards of $3,000 to be paid to each of the six named Plaintiffs.

Should any payments to Class Members fail or remain uncashed after 120 days, such funds will be used to pay any unanticipated costs of administration. If funds still remain after payment of unanticipated administrative costs, the remaining funds will be distributed to Girls Who Code as the *cy pres* recipient, subject to the Court's approval. Under no circumstances shall any settlement funds revert to Apple.

## C.   LEGAL STANDARD FOR FINAL APPROVAL

To grant final approval of a settlement, "Fed. R. Civ. P. 23(e) requires the district court to determine whether a proposed settlement is fundamentally fair, adequate, and reasonable." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998) (internal citations and quotations omitted).

4

[PROPOSED] ORDER GRANTING FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND
PLAINTIFFS' MOTION FOR ATTORNEYS' FEES AND COSTS AND CLASS REPRESENTATIVE SERVICE AWARDS
CASE NO. 4:19-cv-02455-JST

The *Hanlon* court identified the following factors as relevant to assessing a settlement proposal: (1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceeding; (6) the experience and views of counsel; (7) the presence of a government participant; and (8) the reaction of class members to the proposed settlement. *Id.* at 1026 (citation omitted); *see also Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575-76 (9th Cir. 2004) (listing *Hanlon* factors).

Moreover, to determine whether the settlement is "adequate," the Court must "balance the 'proposed award of attorney's fees' vis-à-vis the 'relief provided for the class.'" *Briseño v. Henderson*, 998 F.3d 1014, 1023-24 (9th Cir. 2021) (quoting Fed. R. Civ. P. 23(e)(2)(c)(iii)). To scrutinize attorneys' fees arrangements and "smoke out potential collusion[,]" district courts should apply the factors established in *In re Bluetooth Headset Products Liability Litigation*, 654 F.3d 935 (9th Cir. 2011). *Id.* at 1023, 1026. The "red flags" identified in *Bluetooth* that may lead to a determination that the settlement is inadequate are: "(1) when counsel receives a disproportionate distribution of the settlement; (2) when the parties negotiate a clear sailing arrangement, under which the defendant agrees not to challenge a request for an agreed-upon attorney's fee; and (3) when the agreement contains a kicker or reverter clause that returns unawarded fees to the defendant, rather than the class." *Id.* at 1023 (quoting *Bluetooth*, 654 F.3d at 947) (internal quotation marks omitted).

### D.   JURISDICTION

For the purposes of the Settlement of the Action, the Court finds it has subject matter and personal jurisdiction over the Parties, including all Settlement Class Members, and venue is proper.

### E.   CLASS CERTIFICATION FOR SETTLEMENT PURPOSES ONLY

The Court finds and concludes that, for the purposes of approving this Settlement only, the Settlement Class meets the requirements for certification under Rule 23(a) and Rule 23(b)(3) of the Federal Rules of Civil Procedure. Specifically, the Court finds that: (a) the Settlement Class is

5

[PROPOSED] ORDER GRANTING FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND
PLAINTIFFS' MOTION FOR ATTORNEYS' FEES AND COSTS AND CLASS REPRESENTATIVE SERVICE AWARDS
CASE NO. 4:19-cv-02455-JST

so numerous that joinder of all members is impracticable; (b) there are questions of law or fact common to the Settlement Class; (c) the claims or defenses of the Settlement Class Representatives are typical of the claims or defenses of the Settlement Class Members; and (d) Settlement Class Representatives and Class Counsel will fairly and adequately protect the interests of the Settlement Class because Settlement Class Representatives have no interests antagonistic to the Settlement Class, and have retained counsel who are experienced and competent to prosecute this matter on behalf of the Settlement Class.  Indeed, there are no conflicts of interest between Plaintiffs and the Settlement Class Members, and Class Counsel have vigorously prosecuted this case on behalf of the class for years. Finally, the Settlement Class further satisfies Rule 23(b)(3) in that common issues predominate and "a class action is superior to other available methods for fairly and efficiently adjudicating" the claims here.

This Settlement Class is cohesive: All Settlement Members purchased an iPhone 7 or 7 Plus that allegedly contain a common audio defect that Apple is alleged to have known about and failed to disclose, and the common questions noted above present a significant aspect of litigation and predominate. Although Apple denies these allegations, that does not undermine certification for settlement purposes. Furthermore, the superiority requirement is met because the claims of individual Settlement Class Members are modest in amount and, in light of the great expense associated with bringing individual claims, it is unlikely that they would have the resources necessary to prosecute individual actions.

The Settlement Agreement was reached only after extensive investigation and litigation of over five years, and it was the result of negotiations conducted by the Parties with the assistance of a neutral mediator. Plaintiffs and Class Counsel maintain that the Action and the claims asserted herein are meritorious and that Plaintiffs and the Settlement Class would have prevailed at trial. Apple disputes all of Plaintiffs' claims and denies that class treatment is appropriate. Notwithstanding the foregoing, the Parties have agreed to settle the Action pursuant to the provisions of the Settlement Agreement, after considering, among other things: (a) the benefits to

Plaintiffs and the Settlement Class under the terms of the Settlement Agreement; (b) the attendant risks of litigation, especially in complex actions such as this, as well as the difficulties and delays inherent in such litigation and appeals; and (c) the desirability of consummating the Settlement promptly in order to provide effective relief to Plaintiffs and the Settlement Class and avoid the delays of further litigation. The Court accordingly affirms its certification of the Settlement Class, for settlement purposes only, under Rule 23(a) and Rule 23(b)(3). Excluded from the Settlement Class are: (i) Defendant Apple Inc.; (ii) any entity in which Apple Inc. has a controlling interest; (iii) Apple Inc.'s directors, officers, and employees; (iv) Apple Inc.'s legal representatives, successors, and assigns; (v) all judicial officers assigned to this case, their staff, and their immediate families; and (vi) all Settlement Class Members who made a timely election to be excluded. A list of the Settlement Class Members who made a timely election to be excluded are included as Exhibit F to the Declaration of Steven Weisbrot. The Court also reaffirms the appointment of Class Counsel and the Class Representative pursuant to Rule 23(g) for all the reasons identified above and in its Preliminary Approval Order. Further, the Court affirms the appointment of Girls Who Code as the *cy pres* recipient.

## F.    <u>ADEQUACY OF NOTICE</u>

For a settlement class, the Court must "direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). Notice should "generally describe[] the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and come forward and be heard." *Churchill Village, L.L.C.*, 361 F.3d at 575.

In this Action, the Court finds that the Notice Plan provided the best notice practicable under the circumstances. Pursuant to the procedures approved by the Court in its Preliminary Approval Order, Angeion executed the Notice Plan and reached approximately 94.70% of Settlement Class Members. Weisbrot Decl. ¶ 29. Notice was provided to the Settlement Class through Email Notice, Postcard Notice, and Long Form Notice. *Id.* ¶¶ 11-22, 24, 28. The Notices

1   informed Settlement Class Members of all relevant facts: the nature of the claims, the benefits

2   available under the Settlement, the release of claims, and the processes regarding how to submit

3   Payment Attestation Forms, how to request exclusion from the Settlement, and how to object to

4   the Settlement. In addition to its compliance with the Court's Preliminary Approval Order, each

5   form of notice complied with the United States District Court for the Northern District's

6   Procedural Guidance for Class Action Settlements. Prelim. Appr. Guideline 3.

7          On June 2, 2023, pursuant to 28 U.S.C. §1715, Angeion caused Notice of this Settlement

8   and related materials to be sent to the Attorneys General of all states and territories, as well as the

9   Attorney General of the United States. Weisbrot Decl. ¶ 6. The Settlement Administrator activated

10  the Settlement Website and the Settlement's toll-free hotline on January 15, 2024. *Id.* ¶¶ 23, 27.

11  The Settlement Administrator sent out Email Notice to 1,310,297 Settlement Class Members on

12  January 15, 2024. *Id.* ¶ 12.  Of the 1,310,297 Email Notices, 1,228,783 were delivered and 93,788

13  bounced back as undeliverable. *Id.* ¶ 13. Of the 93,788 Class Members whose Email Notice could

14  not be delivered, 92,780 had a corresponding mailing address. *Id.* On March 12, 2024, Angeion

15  disseminated Email Notice to 31,812 Settlement Class Members whose information was provided

16  in a supplemental file from Defendant. *Id.* ¶ 14. Of the 31,812 Email Notices sent, 30,905 were

17  delivered and 907 bounced back as undeliverable. *Id.*

18         On January 15, 2024, Angeion disseminated the Postcard Notice to 250,727 Settlement

19  Class Members via USPS first-class mail, postage prepaid. *Id.* ¶ 15. On February 14, 2024,

20  Angeion disseminated the Postcard Notice to 92,780 Settlement Class Members for whom Email

21  Notice was undeliverable. *Id.* ¶ 16. On March 18, 2024, Angeion disseminated Postcard Notice to

22  1,138 Settlement Class Members whose information was provided in a supplemental file from

23  Defendant. *Id.* ¶ 17. Notices that were returned by the USPS as undeliverable with a forwarding

24  address were re-mailed to that forwarding address, and notices that were returned by the USPS

25  without a forwarding address were subjected to an address verification search in an attempt to

26

27

[PROPOSED] ORDER GRANTING FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND
PLAINTIFFS' MOTION FOR ATTORNEYS' FEES AND COSTS AND CLASS REPRESENTATIVE SERVICE AWARDS
CASE NO. 4:19-cv-02455-JST

locate an updated address. *Id.* ¶ 19. As a result of those efforts, of the 58,235 Postcard Notices returned as undeliverable, 31,722 were re-mailed to updated addresses. *Id.*

On April 17, 2024, Angeion caused an Email Reminder Notice to be disseminated to the 1,326,703 Settlement Class Members who had a valid email address and had not yet submitted a Payment Attestation Form. *Id.* ¶ 20. On May 10, 2024, at the agreement of the Parties, Angeion caused a Reminder Postcard Notice to be disseminated to the 1,100,044 Settlement Class Members who had a complete mailing address and had not yet submitted a Payment Attestation Form. *Id.* ¶ 21.

This Notice Plan was effective and successful, with a reach rate of direct notice of approximately 94.70% of Settlement Class members received individual notice. *Id.* ¶ 29.

The Settlement Website, which went live on January 15, 2024, contains information about the Settlement, including important dates such as the Final Approval Hearing date and the deadlines to opt-out or object, answers to frequently asked questions, and contact information for the Settlement Administrator. *Id.* ¶ 23.  The Settlement website also contains a downloadable copy of documents relating to the Settlement, including the Settlement Agreement, Long Form Notice, Payment Attestation Form, and Preliminary Approval Order, along with other filings. *Id.* ¶ 24. On April 30, 2024 Angeion published downloadable copies of Class Counsel's motion for attorneys' fees and all declarations filed in support of that motion to the Settlement Website. *Id.* ¶ 25. This was 47 days prior to the deadline for Settlement Class Members to opt out or object on June 3, 2024. As of June 21, 2024, the Settlement Website has received 1,218,980 website visits by 967,972 unique users totaling 10,461,918 page views. *Id.* ¶ 26.

On January 15, 2024, Angeion activated a toll-free telephone number for Settlement Class Members to call and obtain additional information regarding the Settlement through an Interactive Voice Response system. *Id.* ¶ 27. As of June 21, 2024, the Settlement toll-free telephone number has received 18,885 calls totaling 76,267 minutes. *Id.* ¶ 28. As of that date, a total of 163 requests for the Long Form Notice had been received and mailed. *Id.*

In addition, Class Counsel and Angeion received and addressed numerous inquiries from potential as well as confirmed Settlement Class Members, seeking information about the Settlement and form submission.

The Settlement also received press coverage from over two dozen media outlets, including the New York Times, CBS, Business Insider, Good Morning America, and CNN, leading to increased submissions of Payment Attestation Forms.

In an effort to further boost rates of submissions, the Parties jointly agreed to extend the deadline for Class Members to submit Payment Attestation Forms from June 3, 2024 to July 3, 2024. *See* Joint Stipulation Extending Deadline for Settlement Class Members to Submit Valid Payment Information, ECF No. 178; *see also* Order, ECF No. 182. Angeion and Class Counsel took substantial steps to notify the Settlement Class, resulting in expansive reach of the Notice to Settlement Class Members, all in compliance with this Court's Preliminary Approval Order and Procedural Guidelines. Accordingly, the Court finds that the Court-approved Notice Plan has been fully and properly implemented by the Parties and the Settlement Administrator and the Settlement Class has been provided adequate notice of the pendency of this Action and the opportunity to opt out from or present their objections to this Settlement.

## G.   THE SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE

A court may approve a proposed class action settlement only "after a hearing and on finding that it is fair, reasonable, and adequate after considering whether: (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2). This Court is not required to address whether the Settlement is

10

[PROPOSED] ORDER GRANTING FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND
PLAINTIFFS' MOTION FOR ATTORNEYS' FEES AND COSTS AND CLASS REPRESENTATIVE SERVICE AWARDS
CASE NO. 4:19-cv-02455-JST

ideal or the best outcome, but only whether it is fair, free of collusion, and consistent with Plaintiffs' and Class Counsel's obligations to the Settlement Class. For the reasons further detailed below, the Court finds that the proposed settlement is fair, reasonable, and adequate under the Rule 23(e)(2) factors.

Class Counsel are highly experienced in complex class action litigation including, but not limited to, consumer class actions including product defect class actions. They submitted a detailed Joint Declaration explaining their analysis of, and support for, the Settlement, and there is no factual basis to support any allegation of collusion or self-dealing.

**Adequacy of Representation.** There is no question that the Settlement Class Representatives and Class Counsel have adequately represented the Settlement Class over the more than five years of this Action. In the Preliminary Approval Order, this Court found that Plaintiffs and Class Counsel had adequately represented the interests of the Settlement Class. Since that time, there has been no contrary evidence and the Court confirms its preliminary finding. Plaintiffs and Class Counsel have vigorously prosecuted this Action from its infancy.

They defeated, in significant part, both of Apple's motions to dismiss and litigated this novel and complex case through voluminous written discovery and multiple depositions, motion practice, and mediation. Class Counsel possessed sufficient information to make an informed decision about settlement.

**Extent of Discovery.** Prior to reaching the Settlement Agreement, the Parties engaged in significant contentious discovery, including production and review of hundreds of thousands of pages of documents, multiple depositions of the Plaintiffs, and discovery disputes. The Court finds that the amount of investigation and discovery conducted shows that the Parties had adequately developed a perspective on the strengths and weaknesses of their respective cases to "make an informed decision about settlement." *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000) (quoting *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1239 (9th Cir. 1998)).

11

[PROPOSED] ORDER GRANTING FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND
PLAINTIFFS' MOTION FOR ATTORNEYS' FEES AND COSTS AND CLASS REPRESENTATIVE SERVICE AWARDS
CASE NO. 4:19-cv-02455-JST

**Experience and Views of Counsel.** "Parties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 967 (9th Cir. 2009). Consequently, "'[t]he recommendations of plaintiffs' counsel should be given a presumption of reasonableness.'" *In re Omnivision Techns., Inc.*, 559 F. Supp. 2d 1036, 1043 (N.D. Cal. 2009) (quoting *Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 622 (N.D. Cal. 1979)). Class Counsel has extensive experience in complex class actions and has expressed their strong support for the Settlement. Thus, the Court finds that this factor also favors approval of the settlement.

**Arm's Length Negotiations**. The Court finds that the Settlement is the product of serious, non-collusive, arm's length negotiations by experienced counsel with the assistance of a well-respected, experienced mediator, Randall Wulff. Before agreeing on the terms of the Settlement, the Parties engaged in extensive factual investigation, which included the production and review of hundreds of thousands of pages of documents, extensive written discovery, and motions practice. The record was thus sufficiently developed that the Parties were fully informed as to the viability of the claims and able to adequately evaluate the strengths and weaknesses of their respective positions and risks to both sides if the Action was not resolved through settlement. The Court has independently and carefully reviewed the record for any signs of collusion or self-dealing and has found none.

**Monetary Relief.** Under the terms of the Settlement Agreement, Apple will provide $35,000,000 for the Settlement Fund to cover all Settlement Class Member payments, administrative expenses, any taxes owed upon the gross settlement amount (excluding taxes owed by any individual Settlement Class Counsel, Plaintiffs, or Settlement Class Members), any attorneys' fee and expense awards, and any class representative service awards. Settlement Agreement ¶ 14. Any Settlement Class Member who paid any out-of-pocket expenses to Apple for a repair or replacement allegedly relating to a Covered Issue ("OOP Payee") and who submits valid payment information will receive a cash payment, on a *pro rata* basis, between $50 and $349,

with all OOP Payee Settlement Class Members receiving the same amount. *Id.*, § B.3. As modified by the Parties and approved by the Court, the Settlement also provides that any Settlement Class Member who did not pay out-of-pocket costs to Apple for repairs allegedly relating to a Covered Issue ("Complainant") and who submits valid payment information will receive a cash payment, on a *pro rata* basis, of up to $200, with all Complaint Settlement Class Members receiving the same amount. *See* ECF No. 186. The Settlement previously provided up to $125 for Complainants, but given the rate of validated payment form submissions, and in order to ensure that the majority of the Net Settlement Fund is distributed to Settlement Class Members, the parties agreed to increase the maximum amount provided to Complainants. *Id.*

Based on the evidence and argument the Parties submitted in connection with the Settlement, the Court finds that this monetary recovery is fair, reasonable, and adequate given the risks of proceeding to trial in this Court.

**The Risk of Continuing Litigation.**  The monetary relief provided in the Settlement is also reasonable in light of the risks of continued litigation. On the merits, Apple disputes Plaintiffs' claims and the propriety of class certification. Through further litigation, there is a meaningful risk that the Court denies class certification or grants summary judgment in Apple's favor. Even if certification were granted, there remains a meaningful risk that certification could be overturned on appeal, later decertified, or fail to be maintained through trial. If this case were to proceed to trial, there is a meaningful risk that a jury could agree with Apple and find against Plaintiffs. Further, even if Plaintiffs were successful at trial, there remains a risk that a favorable result could be overturned on appeal. Under such circumstances, Plaintiffs could recover nothing. These risks of further, prolonged litigation all support final approval.

**Other Agreements.**  The Court is required to outline "any agreements required to be identified under Rule 23(e)(3)."  The Court understands that there are no other such agreements.

**The Allocation Plan.**  The Proposed Settlement provides benefits to all Settlement Class Members who submit valid payment information, without any preferential treatment of Class

Representatives or any segment of the Settlement Class. *See* Fed. R. Civ. P. 23(e)(2)(D). Specifically, all Settlement Class Members who submit valid payment information will receive cash payments that are proportionate to the type of injury allegedly suffered. OOP Payees will be paid, on a *pro rata* basis, between $50 and $349, while Complainants—who did not pay any out-of-pocket expenses allegedly due to a Covered Issue—will receive, on a *pro rata* basis, up to $200. Each OOP Payee will receive the same amount under the Settlement as other OOP Payees, and each Complainant will receive the same amount as other Complainants. This plan of allocation protects the interests of all parties by directing relief to the most significantly impacted Settlement Class Members—awarding more to OOP Payees, while also paying Complainants. *See In re MacBook Keyboard Litig.*, 2022 WL 17409738, at *6 (preliminarily approving allocation plan which "divide[s] Claimants into three groups which are based on the extent of Settlement Class Members' injuries . . . . Compensation varies by group, with those who have experienced the greatest harm in Group 1 being compensated the greatest amount"); *In re Nexus 6P Prod. Liab. Litig.*, 2019 WL 6622842, at *9 ("The plan divides claimants into different groups based on the relative size of their potential claims and distributes funds based on these groups.").

**The Response of the Settlement Class.** Out of 1,649,497 Settlement Class Members, only 91 Settlement Class Members have requested exclusion from the Settlement. In comparison, as of June 21, 2024, Angeion has received 114,684 Payment Attestation Form submissions, representing a 6.95% submission rate. Weisbrot Decl. ¶ 30. These figures indicate a decidedly positive response to the Settlement and support final approval of the Settlement. *See, e.g.*, *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 944-45 (9th Cir. 2015) (affirming approval of settlement where less than 3.4% of class member filed claims); *Shuman v. SquareTrade Inc.*, No. 20-cv-02725-JCS, 2023 WL 2311950, at *4 (N.D. Cal. Mar. 1, 2023) (approving settlement with claims rate of about 6%).

There were 3 purported objections to the Settlement, 2 of which were submitted by individuals who are not Settlement Class Members. Laurie Bell, a Settlement Class Member who

submitted a Payment Attestation Form, complains that the Settlement Class does not cover all owners of iPhone 7 and iPhone 7 Plus phones and instead only represents purchasers of the iPhone 7 and iPhone 7 Plus phones where the defect manifested and the purchaser complained to Apple. However, pursuant to the Settlement, owners of iPhone 7 and 7 Plus phones, which did not manifest the alleged audio defect, have not released their claims against Apple.

Joseph Soldis is not a Settlement Class Member and, thus, does not have standing to object. His objection is invalid on that basis alone. Moreover, his objection that non-Settlement Class Members were not provided notice or permitted to submit a Payment Attestation Form is not well taken. Non-Settlement Class Members are not required to receive notice nor must they be permitted to submit Payment Attestation Forms, as they are not in the Settlement Class and are not releasing their claims against Apple. Mr. Soldis' objection therefore does not raise a valid criticism of the Notice or the Settlement. Finally, Edward Orr, who is also not a Settlement Class Member, does not have standing to object and, in any event, did not raise any substantive objections to the Settlement.

As such, each of the objections is OVERRULED.

The Court finds that there were 91 timely opt-outs to this Settlement. A list of the 91 Settlement Class Members to be excluded from this Settlement is attached as Exhibit F to the Declaration of Steven Weisbrot. That exhibit will be incorporated into the Final Judgment.

**H.    COMPLIANCE WITH CLASS ACTION FAIRNESS ACT**

The record establishes that the Settlement Administrator served the required notices under the Class Action Fairness Act of 2005, 28 U.S.C. § 1715, with the documentation required by 28 U.S.C. § 1715(b)(1-8), in compliance with that Act.

**I.    CLAIMS COVERED AND RELEASE; NO ADMISSION OF LIABILITY**

This Order constitutes a full, final, and binding resolution between the Releasing Parties, on behalf of themselves and the Settlement Class Members, and the Released Parties. This Release shall be applied to the maximum extent permitted by law.

15

[PROPOSED] ORDER GRANTING FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND
PLAINTIFFS' MOTION FOR ATTORNEYS' FEES AND COSTS AND CLASS REPRESENTATIVE SERVICE AWARDS
CASE NO. 4:19-cv-02455-JST

By operation of this Order and Judgment, with respect to the Released Claims, Plaintiff, the Released Parties, and Settlement Class Members shall be deemed to have waived and relinquished, to the fullest extent permitted by law, the provisions, rights and benefits conferred by any law of any state of the United States, or principle of common law or otherwise, which is similar, comparable, or equivalent to section 1542 of the California Civil Code, which provides:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.

Plaintiffs, Apple (on behalf of itself and the Released Parties), and Settlement Class Members understand and acknowledge the significance of these waivers of California Civil Code section 1542 and any other applicable federal or state statute, case law, rule or regulation relating to limitations on releases.

Neither the Settlement, nor any act performed or document executed pursuant to or in furtherance of the Settlement, is or may be deemed to be or may be used as an admission of, or evidence of, (a) the validity of any Released Claim, (b) any wrongdoing or liability of Apple, or (c) any fault or omission of Apple in any proceeding in any court, administrative agency, arbitral forum, or other tribunal. To the extent permitted by law, neither the Settlement Agreement, the Settlement, this Order, the Judgment, any of their terms or provisions, nor any of the negotiations or proceedings connected with them, shall be offered as evidence or received in evidence or used in any way in any pending or future civil, criminal, or administrative action or any other proceeding to establish any liability or wrongdoing of, or admission by Apple. Notwithstanding the foregoing, nothing in this Order shall be interpreted to prohibit the use of this Order or the Judgment in a proceeding to consummate or enforce the Settlement Agreement or Judgment, or to defend against

the assertion of Released Claims in any other proceeding. All other relief not expressly granted to the Settlement Class Members is denied.

## J. *CY PRES* RECIPIENT

If, after the Settlement Administrator has made a reasonable effort to locate intended recipients of settlement funds whose checks were returned, any amount remains from the Net Settlement Amount, the remaining amount will be distributed to Girls Who Code, the *cy pres* recipient selected by the Parties. SA § B.8. The Ninth Circuit employs the substantial nexus test for determining whether a *cy pres* recipient is fair, adequate, and reasonable. *Lane v. Facebook, Inc.*, 696 F.3d 811, 820-21 (9th Cir. 2012). The Court should analyze whether the *cy pres* recipient has a substantial nexus to the interests of the Settlement Class members in light of the substance of the lawsuit, the statutory objectives, and the interests of the absent class members. *Id*. Girls Who Code is an organization that works to diminish the gender gap in technological professions, increase exposure to underrepresented minorities in the technological field, and expand computer science curricula in schools. *See* Joint Class Counsel Decl. ¶ 50. Because this case involves a technological product, the Court finds that Girls Who Code bears a substantial nexus to the interests of the Settlement Class Members.

## K. ATTORNEYS' FEES, EXPENSES, AND SERVICE AWARD

Class Counsel has requested attorneys' fees and expenses in the combined amount of $8,750,000. This figure represents 25% of the total $35,000,000 Settlement fund. Attorneys' fees and expenses may be awarded in a certified class action under Federal Rule of Civil Procedure 23(h). Such fees must be found "fair, reasonable, and adequate" in order to be approved. Fed. R. Civ. P. 23(e). Employing the percentage-of-the-recovery method for calculating Class Counsel's fees is appropriate here. It is the "preferred" method in common fund settlements. *In re Capacitors Antitrust Litig.*, No. 3:14-CV-03264, 2018 WL 4790575, at *2 (N.D. Cal. Sept. 21, 2018); *see also In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 942 (9th Cir. 2011) ("Because the benefit to the class is easily quantified in common-fund settlements, . . . courts [may] award

17

[PROPOSED] ORDER GRANTING FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND
PLAINTIFFS' MOTION FOR ATTORNEYS' FEES AND COSTS AND CLASS REPRESENTATIVE SERVICE AWARDS
CASE NO. 4:19-cv-02455-JST

attorneys a percentage of the common fund in lieu of the often more time-consuming task of calculating the lodestar.").

In the Ninth Circuit, courts consider of a range of qualitative factors when ruling on a fee request. *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998) (giving examples including "the quality of the representation, the benefit obtained for the class, the complexity and novelty of the issues presented, and the risk of nonpayment"). Consideration of the following factors is appropriate and support the requested fee award of 25% (a) the significance of the relief, (b) the public interest served by the litigation and the public benefits provided by the settlement, (c) the quality of representation and the novelty and complexity of the issues litigated, (d) the opposition mounted by a well-funded defendant, and (e) the expense, opportunity costs, delayed payment, and contingent risks that Class Counsel bore.

Since the inception of this litigation, Class Counsel have brought their extensive skills and experience to bear, by performing thorough investigations prior to initial filing; by briefing, arguing, and defeating multiple motions to dismiss; by obtaining relevant and vital information in discovery, which required diligent advocacy through at least 10 discovery dispute letters and 18 meet-and-confer conversations with Apple; by reviewing hundreds of thousands of pages of Apple's produced documents; by preparing and defending Plaintiffs in their depositions; by engaging in substantial motions practice including Plaintiffs' motion for preliminary approval; by regularly appearing before this Court in at least 10 case management conferences; by obtaining and working closely with knowledgeable and experienced experts; by negotiating the Settlement; and by overseeing administration of the Settlement.

After over five years of investigation and contentious litigation in this complex case, and without any payment and with significant risk, Class Counsel negotiated, after a mediation session with an experienced mediator and months of subsequent negotiations, a non-reversionary $35 million Settlement Fund. This result is especially significant considering the novel and complex legal and factual issues in this case. Apple defended this case at every turn and contested all of

Plaintiffs' key arguments.  In zealously advocating for Plaintiffs and the Settlement Class for over five years, Class Counsel took on substantial risk—including the real risk of zero recovery—and bore considerable expense.

Indeed, while it is not required that this Court engage in a lodestar cross-check, the requested fee of 25% is reasonable when such a cross-check is completed. Both Class Counsel's firms have set their billing rates based on the Adjusted Laffey matrix, which has been accepted by the Ninth Circuit. *See Mancini v. Dan P. Plute, Inc.*, 358 F. App'x 886, 889 (9th Cir. 2009); *see also Smith v. Am. Greetings Corp.*, No. 14-cv-02577-JST, 2016 WL 362395, at *9 & n.6 (N.D. Cal. Jan. 29, 2016) (Tigar, J.). Class Counsel have submitted detailed charts showing their expenditure of time and calculation of lodestar. Throughout this litigation, Class Counsel have expended 8,121.85 total hours over the approximately five years of this litigation, resulting in a total lodestar of $4,820,585.65, based upon reasonable billing rates. *See* Joint Class Counsel Decl. ¶ 60. This results in a reasonable 1.82 multiplier, compared to the total requested attorneys' fees and expenses. *Id.* The Court finds that Class Counsel's detailed charts summarizing the types of tasks undertaken, by timekeeper, show that the hours expended were reasonable and justified.

Class Counsel have also submitted a detailed declaration outlining the litigation expenses expended in this Action, which amount to $175,143.81 in out-of-pocket costs for the benefit of the Settlement Class. These costs include expert fees, document retrieval and document production management fees, court reporting and transcript services, mediation expenses, court fees, and fees related to third-party subpoenas. These standard out-of-pocket costs are reasonable, and Counsel are entitled to reimbursement for such expenses incurred in investigating and prosecuting this Action. *See Schneider v. Chipotle Mexican Grill, Inc.*, 336 F.R.D. 588 (N.D. Cal. 2020) ("Class Counsel is entitled to recover those out-of-pocket expenses that would normally be charged to a fee paying client." (internal quotation marks and citation omitted)).

For all of these reasons, Plaintiffs' and Class Counsel's request for attorneys' fees and costs in the amount of $8,750,000 is GRANTED.

L.     **SERVICE AWARDS TO CLASS REPRESENTATIVES**

Class Counsel requests Service Awards of $3,000 for each of the five Plaintiffs in recognition for their service to the Settlement Class over this nearly five year-long litigation. Service awards "are fairly typical in class action cases." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 958 (9th Cir. 2009). They "are intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." *Id.* at 958-59. This request is well within the range of service awards in this District. Plaintiffs contributed significantly to the success in this case including by reviewing the Complaints filed in this action, compiling documents, responding to written discovery requests, regularly conferring with Class Counsel regarding discovery, sitting for their lengthy depositions, regularly corresponding with Counsel, and conferring with Counsel regarding settlement negotiations. *See generally* District's Guidelines for Final Approval of Class Settlements, Guideline 3. Thus, the requested Service Award payments of $3,000 to each of the Plaintiffs (totaling $18,000) are GRANTED.

M.     **AUTHORIZATION TO PARTIES TO IMPLEMENT AGREEMENT AND MODIFICATIONS OF AGREEMENT**

By this Order, the Parties are hereby authorized to implement the terms of the Settlement Agreement. After the date of entry of this Order, the Parties may by written agreement effectuate such amendments, modifications, or expansion of the Settlement Agreement and its implementing documents without further approval of the Court if such changes are consistent with the terms of this Order and do not materially alter, reduce, or limit the rights of Settlement Class Members under the Settlement Agreement.

N.     **TERMINATION**

In the event that the Settlement Agreement is terminated pursuant to the terms of the Settlement Agreement or otherwise does not become effective, then this Order and any Judgment entered herein shall be rendered null and void to the extent provided by and in accordance with

20

the Agreement and shall be vacated and, in such event, all orders entered and releases delivered in connection herewith shall be null and void to the extent provided by and in accordance with the Agreement. Further, the Court's grant of conditional class certification of the Settlement Class shall be vacated, the Parties shall revert to their positions in the Lawsuit as they existed before the Settlement Agreement's execution date, May 25, 2023, and the Class Representatives and the Settlement Class Members will once again bear the burden to prove the propriety of class certification and the merits of their claims at trial.

## O.   RETENTION OF JURISDICTION

Without affecting the finality of this Order or the Judgment entered herein, the Court shall retain jurisdiction over any claim relating to the Settlement Agreement (including all claims for enforcement of the Settlement Agreement and/or all claims arising out of a breach of the Settlement Agreement) as well as any future claims by any Settlement Class Member relating in any way to the Released Claims.

## P.   FINAL JUDGMENT AND DISMISSAL WITH PREJUDICE

The Court finds, pursuant to Rules 54(a) and (b) of the Federal Rules of Civil Procedure, that Final Judgment of Dismissal with prejudice as to the Defendants ("Judgment") should be entered forthwith and further finds that there is no just reason for delay in the entry of the Judgment, as Final Judgment, in accordance with the Settlement Agreement.


**IT IS SO ORDERED.**


DATED: _____, 2023                        _____
                                                   HON. JON S. TIGAR
                                                   UNITED STATES DISTRICT JUDGE