UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LISA TABAK, et al.,<br><br>    Plaintiffs,<br><br>v.<br><br>APPLE, INC.,<br><br>    Defendant. | Case No. 19-cv-02455-JST<br><br>**ORDER GRANTING PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT; ATTORNEY'S FEES AND COSTS; AND INCENTIVE AWARDS**<br><br>Re: ECF Nos. 177, 187 |

Before the Court is Plaintiffs Lisa Tabak, De'Jhontai Banks, Matthew White, Kelly Camelo-Cenicola, Nestor Trujillo, and Christine Clemence's motion for final approval of class action settlement. ECF No. 187. The Court will grant the motion.

I.    **BACKGROUND**

    **A.**     **Factual and Procedural Background**

Plaintiffs brought this class action against Defendant Apple for an alleged audio defect in the iPhone 7 and iPhone 7 Plus. ECF No. 30. Specifically, Plaintiffs alleged that the iPhone 7 and iPhone 7 Plus's casing can bend excessively through normal and intended use, severing the connection between the audio IC chip and the logic board. This affects the functionality of the devices' audio system, resulting in poor sound, and preventing users from making phone calls and using the devices' voice features, such as the Siri application. *Id.* ¶¶ 70-71, 75-76.

Plaintiffs filed their original complaint on May 6, 2019. ECF No. 1. Following an amendment and full briefing on Apple's motion to dismiss, the Court granted partial dismissal with leave to amend. ECF No. 62. Plaintiffs filed the operative Second Amended Complaint on February 20, 2020. ECF No. 67. Following further briefing on a subsequent motion to dismiss, the Court dismissed several claims with prejudice but declined to dismiss certain express warranty

claims, implied warranty claims under the Song-Beverly Consumer Warranty Act, various state consumer protection claims, and common law fraud and negligent misrepresentation claims. ECF No. 90.

After approximately four years of litigation and discovery, the parties reached an agreement to resolve the claims raised in the action. On May 25, 2023, Plaintiffs filed a motion for preliminary approval of the Class and Settlement Agreement. ECF No. 171. On November 21, 2023, the Court granted preliminary approval. ECF No. 176. Plaintiffs now move for final approval of the Settlement and for an award of attorney's fees, costs, and service awards. ECF Nos. 177, 187. The Court held a final approval hearing on July 18, 2024, and ordered supplemental briefing. ECF No. 197.

### B.  Terms of Settlement

The proposed Settlement Agreement resolves the claims between Defendants and the Settlement Class, defined as follows:

> [I]ndividual persons who are United States residents and who own or owned an Apple iPhone 7 or 7 Plus and reported to Apple in the United States Covered Issues, including but not limited to those who paid Apple out of pocket for repairs or replacements for Covered Issues as reflected in Apple's records. The Settlement Class excludes Apple; any entity in which Apple has a controlling interest; Apple's directors, officers, and employees; Apple's legal representatives, successors, and assigns. Also excluded from the Settlement Class are all judicial officers assigned to this case as well as their staff and immediate families. The Class Period shall be September 16, 2016, to January 3, 2023.

ECF No. 171-2 ¶ 25. "Covered Issues" are defined as "issues reported to Apple regarding the iPhone 7 and iPhone 7 Plus reflected in Apple's records as Sound-Speaker, Sound-Microphone, Sound–Receiver, Unexpected Restart/ Shutdown, or Power on – Device Unresponsive." *Id.* ¶ 6. Under the Settlement, Apple agreed to pay $35 million into the Settlement Fund. *Id.* ¶ 28.

Pursuant to the Settlement, Class Members who provide valid payment information will receive payment from the Settlement Fund. Class Members who paid any out-of-pocket expenses to Apple for a repair or replacement allegedly relating to a Covered Issue ("OOP Payee") and who submit valid payment information will receive, on a *pro rata* basis, a cash payment between $50

2

and $349, with all OOP Payees receiving the same amount. *Id.* § B.3. Any Settlement Class Member who did not pay out-of-pocket costs to Apple for repairs allegedly relating to a Covered Issue ("Complainant") and who submits valid payment information will receive, on a *pro rata* basis, a cash payment of up to $200, with all Complainants receiving the same amount. ECF No. 186.

Class Members originally had until June 3, 2024, to submit their payment information to the Settlement Administrator. ECF No. 176 ¶ 16. That deadline was extended until July 3, 2024. ECF No. 182. Should any payments to Class Members fail or remain uncashed after 120 days, such funds will be used to pay any unanticipated costs of administration. ECF No. 171-2 § B.7. If funds still remain after payment of unanticipated administrative costs, the remaining funds will be distributed to Girls Who Code as a *cy pres* recipient. *Id.* § B.8.

## II. FINAL APPROVAL OF SETTLEMENT

### A. Legal Standard

"The claims, issues, or defenses of a certified class . . . may be settled, voluntarily dismissed, or compromised only with the court's approval." Fed. R. Civ. P. 23(e). "Adequate notice is critical to court approval of a class settlement under Rule 23(e)." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1025 (9th Cir. 1998), *overruled on other grounds by Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011). In addition, Rule 23(e) "requires the district court to determine whether a proposed settlement is fundamentally fair, adequate, and reasonable." *Id.* at 1026. In making that determination, the district court must balance several factors:

> (1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement.

*Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004) (citing *Hanlon*, 150 F.3d at 1026).

Additionally, Rule 23 now requires district courts to consider a similar list of factors, including the adequacy of representation by class representatives and class counsel, whether the

3

proposal was negotiated at arm's length, and the adequacy of the relief and equitable treatment of class members. Fed. R. Civ. P. 23(e)(2). These factors were "not designed 'to displace any factor [developed under existing circuits' precedent], but rather to focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal.'" *Hefler v. Wells Fargo & Co.*, No. 16-cv-05479-JST, 2018 WL 6619983, at *4 (N.D. Cal. Dec. 18, 2018), *aff'd sub nom. Hefler v. Pekoc*, 802 F. App'x 285 (9th Cir. 2020) (quoting Fed. R. Civ. P. 23(e)(2) advisory committee's note to 2018 amendment).

Settlements that occur before formal class certification also "require a higher standard of fairness." *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 458 (9th Cir. 2000). In reviewing such settlements, in addition to considering the factors above, the court also must ensure that "the settlement is not the product of collusion among the negotiating parties." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946–47 (9th Cir. 2011) (quotation marks and citation omitted).

### B.   CAFA Compliance

This action is subject to the requirements of the Class Action Fairness Act of 2005 ("CAFA") which requires that, within ten days of the filing of a proposed settlement, each defendant serve a notice containing certain required information upon the appropriate state and federal officials. 28 U.S.C. § 1715(b). CAFA also prohibits a court from granting final approval until 90 days have elapsed since notice was served under Section 1715(b). *Id.* § 1715(d). Defendants mailed the CAFA notices over 90 days ago. Weisbrot Decl. ¶ 6, ECF No. 187-2.

### C.   Discussion

#### 1.   Adequacy of Notice

A "court must direct notice [of a proposed class settlement] in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1)(B). The parties must provide class members with "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). "[T]he class must be notified of a proposed settlement in a manner that does not systematically leave any group without notice." *Officers for Just. v. Civ. Serv. Comm'n of City & Cnty. of S.F.*, 688 F.2d 615, 624 (9th Cir. 1982).

4

Following dissemination of notices in accordance with the Court approved notice plan and including dissemination of additional reminder notices jointly approved by the parties, the Claims Administrator, Angeion, estimates that notice reached approximately 94.7% of Settlement Class Members. Weisbrot Decl. ¶ 29, ECF No. 187-2. In addition, since January 15, 2024, Angeion has maintained a toll-free number to provide Settlement Class Members with responses to frequently asked questions and provide essential information regarding the Settlement. *Id.* ¶ 27. Angeion has also activated a website that contains information about the Settlement, relevant Court documents, important dates and allows Class Members to file a payment attestation form directly on the website. *Id.* ¶ 23.

In light of the above procedures, which adhere to the previously approved notice plan, the Court finds that the parties have sufficiently provided notice of the Settlement to the Class Members. *See Keller v. Elec. Arts, Inc.*, No. 09-cv-1967 CW, 2015 WL 5005057, at *5 (N.D. Cal. Aug. 18, 2015) (granting final approval and stating notice process with "almost 95%" reach rate provided due and adequate notice to the Class"); *see also Perkins v. LinkedIn Corp.*, No. 13-cv-04303-LHK, 2016 WL 613255, at *7 (N.D. Cal. Feb. 16, 2016) (finding class notice adequate where the approved notice was sent in accordance with the approved notice plan, which was "consistent with the requirements of Rule 23 and due process").

### 2.     Fairness, Adequacy, and Reasonableness

#### a.     Adequate Representation of the Class

The Ninth Circuit has explained that "adequacy of representation . . . requires that two questions be addressed: (a) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (b) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *In re Mego*, 213 F.3d at 462 (citing *Hanlon*, 150 F.3d at 1020).

During the preliminary approval stage, the Court found no evidence of a conflict between the Class and the representatives or counsel. ECF No. 176 ¶ 5. No contrary evidence has emerged, and no issues have been raised by Class Members. Similarly, the Court finds that Class Counsel are experienced in class action litigation and have vigorously prosecuted this action on

5

behalf of the Class. The Court concludes that this factor weighs in favor of approval.

          **b.**      **Strength of Plaintiffs' Case and Risks of Litigation**

Approval of a class settlement is appropriate when "there are significant barriers plaintiffs must overcome in making their case." *Chun-Hoon v. McKee Foods Corp.*, 716 F. Supp. 2d 848, 851 (N.D. Cal. 2010). Difficulties and risks in litigating weigh in favor of approving a class settlement. *See Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 966 (9th Cir. 2009).

Plaintiffs here face significant obstacles if the case were to proceed to trial, as they acknowledge. ECF 187 at 26. Defendants continue to dispute liability and damages. *See e.g.* ECF No. 97. The Court finds that these acknowledged weaknesses weigh in favor of approving the Settlement. *See Moore v. Verizon Commc'ns Inc.*, 09-cv-1823 SBA, 2013 WL 4610764, at *6 (N.D. Cal. Aug. 28, 2013) (finding that the strength of plaintiffs' case favored settlement because plaintiffs admitted that they would face hurdles in establishing class certification, liability, and damages). Additionally, "[i]nevitable appeals would likely prolong the litigation, and any recovery by class members, for years." *Rodriguez*, 563 F.3d at 966.

          **c.**      **Effectiveness of Distribution Method, Terms of Attorney's Fees, and Supplemental Agreements**

The Court must consider "the effectiveness of [the] proposed method of distributing relief to the class." Fed. R. Civ. P. 23(e)(2)(C)(ii). Under the Settlement, Class Members can submit their claims by completing a payment attestation form, with their basic personal information, and an election of payment method, either online or through mail. ECF No. 187-5 Ex. C. OOP Payees who submit valid payment information will receive, on a *pro rata* basis, a cash payment between $50 and $349, with all OOP Payees receiving the same amount. ECF No. 171-2 § B.3. Class Members who did not pay out-of-pocket costs to Apple for repairs allegedly relating to a Covered Issue and who submit valid payment information will receive, on a *pro rata* basis, a cash payment of up to $200, with all Complainants receiving the same amount. ECF No 186. This method of processing claims is fair and reasonable.

The Court has also evaluated in detail "the terms of [the] proposed award of attorneys' fees," Fed. R. Civ. P. 23(e)(2)(C)(iii), in connection with Class Counsel's motion for fees and

1  costs. Class Counsel's requested attorneys' fees equals 25% of the Settlement Fund—the
2  prevailing benchmark for percentage fee awards in the Ninth Circuit. ECF No. 177; *In re Online*
3  *DVD-Rental Antitrust Litig.*, 779 F.3d 934, 949 (9th Cir. 2015). As explained below, the Court
4  finds that the fee amount is reasonable. Accordingly, the Court finds this factor weighs in favor of
5  approval. Further, there are no applicable "agreement[s] made in connection with the proposal"
6  within the meaning of Rule 23(e)(3).

### d.   Equitable Treatment of Class Members

Consistent with Rule 23's instruction to consider whether "the proposal treats class members equitably relative to each other," Fed. R. Civ. P. 23(e)(2)(D), the Court considers whether the settlement "improperly grant[s] preferential treatment to class representatives or segments of the class." *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007).

The Settlement provides for Class Members to receive payments in different amounts depending on whether they paid out-of-pocket to repair their phones. Class Members who did incur out-of-pocket expenses will receive between $50 and $349, while Class Members who did not pay such expenses will receive up to $200. All out OOP Payees will receive the same amount. Those Class Members who did not pay any out-of-pocket expenses will receive the same amount. "The plan divides claimants into different groups based on the relative size of their potential claims." *In re Nexus 6P Products Liab. Litig.*, No. 17-cv-02185-BLF, 2019 WL 6622842, at *9 (N.D. Cal. Nov. 12, 2019). Accordingly, the Settlement treats Class Members fairly based on the strength of their claims. *See In re Volkswagen "Clean Diesel" Mktg.*, No. 15-MD-02672-CRB, 2022 WL 17730381, at *8 (N.D. Cal. Nov. 9, 2022) (approving settlement where class members received different amounts based on differing damages).

### e.   Settlement Amount

Although not articulated as a separate factor in Rule 23(e), "[t]he relief that the settlement is expected to provide to class members is a central concern." Fed. R. Civ. P. 23(e)(2)(C)–(D) advisory committee's note to 2018 amendment. The Court therefore examines "the amount offered in settlement." *Hanlon*, 150 F.3d at 1026.

To evaluate the adequacy of the settlement amount, "courts primarily consider plaintiffs' expected recovery balanced against the value of the settlement offer." *In re Tableware*, 484 F. Supp. 2d at 1080. But "a cash settlement amounting to only a fraction of the potential recovery will not per se render the settlement inadequate or unfair." *Officers for Just.*, 688 F.2d at 628.

Here Defendants have agreed to establish a $35 million fund. "The Settlement ensures payment of up to $349 through a straightforward process to any consumer who paid out-of-pocket expenses allegedly related to a Covered Issue. This figure is intended to compensate such consumers, because it is designed to track the average out-of-pocket expenses related to repairing or replacing an iPhone allegedly experiencing one of the Covered Issues." ECF No. 187 at 28. "Additional benefits are reserved for those who contacted Apple allegedly regarding a Covered Issue but did not pay for repairs or replacements. These consumers—considered 'Complainants' under the Settlement—may receive up to $200." *Id.*

Class Counsel calculates that the Settlement offers Class Members 12.05% of the total potential "best day" damages based on a cost-of-repair analysis or 15.18% to 20.24% based on a conjoint analysis. ECF No. 204 at 9–12. "It is well-settled law" that a cash settlement smaller than the potential recovery "does not per se render the settlement inadequate or unfair." *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1042 (N.D. Cal. 2008) (quoting *Officers for Just.*, 688 F.2d at 628). In the light of the uncertainties described above, the Court finds the percentage of recovery fair and reasonable. *See Dixon v. Cushman & Wakefield W., Inc.*, 18-cv-05813-JSC, 2022 WL 1189883, at *7 (N.D. Cal. Apr. 21, 2022) (finding settlement fund that was an estimated 8% of the total maximum recovery fair in relation to the risks of continued litigation).

#### f. Extent of Discovery

"[I]n the context of class action settlements, formal discovery is not a necessary ticket to the bargaining table where the parties have sufficient information to make an informed decision about settlement." *In re Mego*, 213 F.3d at 459 (quotation marks and citation omitted). However, a greater amount of completed discovery supports approval of a proposed settlement, especially when litigation has "proceeded to a point at which both plaintiffs and defendants ha[ve] a clear view of the strengths and weaknesses of their cases." *Chun-Hoon*, 716 F. Supp. 2d at 852

(quotation marks and citation omitted).

Here, the parties conducted sufficient discovery to make an informed decision about the adequacy of the Settlement. The parties "have been engaged in discovery since 2021, and . . . completed document production and review (with hundreds of thousand of pages produced and reviewed)." ECF No. 187 at 29. "Further, all the named Plaintiffs had been deposed at the time the [p]arties engaged in mediation" and Class Counsel consulted with experts. *Id.* In addition, Class Counsel briefed two oppositions to two motions to dismiss. This factor weighs in favor of approval. *See In re Omnivision*, 559 F. Supp. 2d at 1042 (finding the parties were sufficiently informed about the case prior to settling because they engaged in discovery, took depositions, briefed motions, and participated in mediation).

### g. Counsel's Experience

The Court also considers "the experience and views of counsel." *Hanlon*, 150 F.3d at 1026. That counsel advocate in favor of this Settlement weighs in favor of its approval.[1]

### h. Absence of Collusion and Arm's Length Negotiations

"Where . . . the parties negotiate a settlement agreement before the class has been certified, settlement approval requires a higher standard of fairness . . . ," and the Court must examine the risk of collusion with "an even higher level of scrutiny for evidence of collusion or other conflicts of interest." *Roes, 1-2 v. SFBSC Mgmt., LLC*, 944 F.3d 1035, 1048–49 (9th Cir. 2019) (quotation marks omitted) (first quoting *Dennis v. Kellog Co.*, 697 F.3d 858, 864 (9th Cir. 2012); and then quoting *In re Bluetooth*, 654 F.3d at 946). Signs of potential collusion include: (1) a disproportionate distribution of the settlement fund to counsel; (2) negotiation of a "clear sailing agreement"; and (3) an arrangement for funds not awarded to revert to defendant rather than to be added to the settlement fund. *In re Bluetooth*, 654 F.3d at 947. If "multiple indicia of possible implicit collusion" are present, the Court has a "special 'obligation to assure itself that the fees

---

[1] The Court considers this factor, as it must, but gives it little weight. "[A]lthough a court might give weight to the fact that counsel for the class or the defendant favors the settlement, the court should keep in mind that the lawyers, who negotiated the settlement will rarely offer anything less than a strong, favorable endorsement." *Principles of the Law of Aggregate Litigation* §3.05 cmt. a (Am. Law. Inst. 2010).

awarded in the agreement [are] not unreasonably high.'" *Id.* (quoting *Staton v. Boeing Co.*, 327 F.3d 938, 965 (9th Cir. 2003)).

These factors do not point to collusion here. Class Counsel requests an award of 25% of the common fund, which is the "benchmark award for attorney fees," *Hanlon*, 150 F.3d at 1029, and raises no concerns regarding collusion. *Woodward v. Labrada*, No. EDCV 16-00189 JGB (SPx), 2019 WL 4509301, at *11 (C.D. Cal. Apr. 23, 2019). Nor does the Settlement contain a clear sailing or reversion provision. The Court concludes that the absence of any *Bluetooth* factors weighs in favor of approval.

### i. Reaction of the Class

Finally, the Court considers the Class's reaction to the Settlement. "[T]he absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members." *In re Omnivision*, 559 F. Supp. 2d at 1043 (quotation marks and citation omitted). Here, the reaction of the class was favorable. 114,684 Class Members have submitted claims, representing a 6.95% submission rate. Weisbrot Decl. ¶ 30, ECF No. 187-2. Moreover, of the 1,649,497 Class Members, one objected[2] and 91 have opted out. ECF No. 187 at 9. This factor therefore weighs in favor of approval. *See e.g. Church Vill.*, 361 F.3d at 577 (holding that approval of a settlement that received 45 objections and 500 opt-outs out of 90,000 class members was proper); *In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. 299, 320–22 (N.D. Cal. 2018) (finding that there was a positive response to the settlement where about 1.8% of class members submitted claims, 28 class members objected, and 406 class members (about 0.0005% of the Class) opted out).

### j. *Cy Pres* Distribution

"*Cy pres* refers to a method for distributing unclaimed settlement funds 'to the "next best" class of beneficiaries.'" *Campbell v. Facebook, Inc.*, 951 F.3d 1106, 1116 n.6 (9th Cir. 2020) (quoting *Nachshin v. AOL, LLC*, 663 F.3d 1034, 1036 (9th Cir. 2011)). "Under the *cy pres* approach, 'class members receive an indirect benefit (usually through defendant donations to a

---

[2] The Court received two other objections from non-class members.

10

third party) rather than a direct monetary payment.'" *In re EasySaver Rewards Litig.*, 906 F.3d 747, 760 (9th Cir. 2018) (quoting *Lane v. Facebook, Inc.*, 696 F.3d 811, 819 (9th Cir. 2012)). A *cy pres* distribution is appropriate when it bears a substantial nexus to the interests of the class members. *See Dennis*, 697 F.3d at 865.

At the final settlement approval hearing the Court noted that the parties provided no explanation as to why Girls Who Code would be an appropriate *cy pres* recipient and ordered supplemental briefing on the issue. ECF No. 197. Plaintiffs in their supplemental brief explain that the Settlement "includes consumers across the United States who experienced a manifestation of the alleged issue in their consumer electronic devices." ECF No. 204 at 15. "Girls Who Code works to diminish the gender gap in technological professions, to increase exposure to underrepresented minorities in the technological field, and to expand computer science curricula in schools." *Id.* "Through this mission, Girl Who Code's work directly benefits consumers of technology products, including the iPhone devices at issue here" by increasing diversity which "creates a broader talent pool, which in turn leads to greater competition, more diverse viewpoints, and higher quality products." *Id.* The Court finds the parties have met their burden to show "a driving nexus between the plaintiff class and the *cy pres* beneficiaries." *Dennis*, 697 F.3d at 865 (quotation marks and citation omitted).

### 3. Balance of Factors

All of the factors outline in *Churchill Village* weigh in favor of final approval and of a finding that the proposed Settlement is fair, reasonable, and adequate. 361 F.3d 566. The Court therefore grants approval.

### 4. Objections to Settlement

The Court received objections to the proposed settlement from four persons. *See* ECF Nos. 179, 180, 181, 183, 191, 205. Some objectors submitted more than one objection. *Id.* Only one objector submitted a timely objector and was also a member of the class. ECF No. 183. She objected that all purchasers of the iPhone 7, including those who did not contact Apple and therefore are not Settlement Class Members, should receive compensation under the Settlement. However, she herself is a class member and will receive payment under the Settlement. Also, the

11

Settlement does not purport to resolve the claims of non-class members. The objection is accordingly overruled.

## III. ATTORNEY'S FEES, EXPENSES, AND INCENTIVE AWARDS

### A. Attorney's Fees

"While attorneys' fees and costs may be awarded in a certified class action . . ., courts have an independent obligation to ensure that the award, like the settlement itself, is reasonable, even if the parties have already agreed to an amount." *In re Bluetooth*, 654 F.3d at 941 (citation omitted). "Where a settlement produces a common fund for the benefit of the entire class," as here, "courts have discretion to employ either the lodestar method or the percentage-of-recovery method" to assess the reasonableness of the requested attorneys' fee award. *Id.* at 942. "Because the benefit to the class is easily quantified in common-fund settlements," the Ninth Circuit permits district courts "to award attorneys a percentage of the common fund in lieu of the often more time-consuming task of calculating the lodestar." *Id.* The Ninth Circuit maintains a well-established "benchmark for an attorneys' fee award in a successful class action [of] twenty-five percent of the entire common fund." *Williams v. MGM-Pathe Commc'ns Co.*, 129 F.3d 1026, 1027 (9th Cir. 1997) (per curiam). Courts in the Ninth Circuit generally start with the 25% benchmark and adjust upward or downward depending on:

> the extent to which class counsel "achieved exceptional results for the class," whether the case was risky for class counsel, whether counsel's performance "generated benefits beyond the cash settlement fund," the market rate for the particular field of law (in some circumstances), the burdens class counsel experienced while litigating the case (e.g., cost, duration, foregoing other work), and whether the case was handled on a contingency basis.

*In re Online DVD-Rental*, 779 F.3d at 954–55 (quoting *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048–50 (9th Cir. 2002)). In addition, courts often crosscheck the amount of fees against the lodestar. "Calculation of the lodestar, which measures the lawyers' investment of time in the litigation, provides a check on the reasonableness of the percentage award." *Vizcaino*, 290 F.3d at 1050. "The lodestar figure is calculated by multiplying the number of hours the prevailing party reasonably expended on the litigation (as supported by adequate documentation) by a reasonable

12

hourly rate for the region and for the experience of the lawyer." *In re Bluetooth,* 654 F.3d at 941. Regardless of whether the court uses the lodestar or percentage approach, the main inquiry is whether the fee award is "reasonable in relation to what the plaintiffs recovered." *Powers v. Eichen*, 229 F.3d 1249, 1258 (9th Cir. 2000).

The Court will grant Class Counsel's request for an attorney's fee of 25% of the Settlement, for a total of $8,750,000. ECF No. 177 at 15. While the Ninth Circuit's 25% benchmark "is not per se valid, it is a helpful 'starting point.'" *In re Online DVD-Rental*, 779 F.3d at 955 (quoting *Vizcaino*, 290 F.3d at 1048). Applying the factors outlined above suggests no reason to vary from this percentage. Counsel achieved a very good result for the Class; counsel took on substantial risk in bringing the case, which they brought on contingency; and the case has been pending for over five years. The requested percentage is reasonable.

Courts often cross-check the amount of attorney's fees using the lodestar method. Class Counsel's total lodestar is $4,680,669.95, resulting in a 1.87 multiplier. ECF No. 177 at 21. Class Counsel spent a total of 7,943.05 hours litigating this case, with their rates ranging from $437 for the most junior associate to $1,057 to the most senior partner and $239 for paralegals. *Id.* at 21–28. Courts in this district have approved similar rates. *See, e.g., In re MacBook Keyboard Litig.*, 18-cv-02813-EJD, 2023 WL 3688452, at *15 (N.D. Cal. May 25, 2023) (approving partner rates up to $1,95, associate rates up to $850, and paralegal rates of $325); *Hefler,* 2018 WL 6619983, at *14 (approving partner rates up to $1,250, associate rates up to $650, and paralegal rates up to $350); *Hopkins v. Stryker Sales Corp.*, 11-cv-02786-LHK, 2013 WL 496358, at *4 (N.D. Cal. Feb. 6, 2013) ("Multipliers of 1 to 4 are commonly found to be appropriate in complex class action cases.").

### B. Reimbursement of Costs

An attorney is entitled to "recover as part of the award of attorney's fees those out-of-pocket expenses that would normally be charged to a fee-paying client." *Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994) (quotation marks and citation omitted). Class Counsel's requested attorney's fees includes the $175,143.81 they incurred in fees and costs. ECF No. 177 at 15.

### C. Incentive Awards

"[Incentive] awards are discretionary and are intended to compensate class representatives for work done on behalf of the class." *Rodriguez*, 563 F.3d at 958 (citation omitted). In evaluating requests for such awards, the Court should consider:

> (1) the actions the plaintiff has taken to protect the interests of the class; (2) the degree to which the class has benefitted from those actions; (3) the duration of the litigation and the amount of time and effort the plaintiff expended in purs[uing] it; and (4) the risks to the plaintiff in commencing the litigation, including reasonable fears of workplace retaliation, personal difficulties, and financial risks.

*Wren v. RGIS Inventory Specialists*, No. C-06-05778 JCS, 2011 WL 1230826, at *32 (N.D. Cal. Apr. 1, 2011). "[C]ourts must be vigilant in scrutinizing all incentive awards to determine whether they destroy the adequacy of the class representatives." *Radcliffe v. Experian Info. Sols., Inc.*, 715 F.3d 1157, 1164 (9th Cir. 2013). "An award of $5,000 is presumptively reasonable." *Rollins v. Dignity Health*, No. 13-cv-01450-JST, 2022 WL 20184568, at *9 (N.D. Cal. July 15, 2022).

Plaintiffs request service awards in the amount of $3,000 for each of the named Plaintiffs. ECF No. 177 at 30. The Court finds the requested awards are reasonable. Plaintiffs worked with Class Counsel throughout the litigation, reviewing pleadings and other filings, remaining informed during all stages of the litigation, responding to discovery, searching for and producing documents, preparing for and sitting for depositions, and played an active role in considering and approving the Settlement terms. *Id.*; ECF No. 177-1 ¶¶ 29, 31–34. Accordingly, the Court approves an incentive award of $3,000 to each named Plaintiff.

## CONCLUSION

1. For the reasons set forth in its November 21, 2023 order, ECF No. 176, the Court confirms certification of the Class for settlement purposes only.

2. The Court grants final approval of the proposed Settlement Agreement and plan of allocation.

3. The Court awards Class Counsel $8,750,000 in attorney's fees. The Court will withhold ten precent of the awarded attorney's fees until a post-distribution accounting has been

14

filed. A post-distribution accounting must be filed within 21 days after the distribution of Settlement Funds.

4. The Court grants an incentive award of $3,000 to each of the named Plaintiffs.

5. Class Members who asked to opt out of the Settlement are excluded from the Class.

6. The Court retains continuing jurisdiction over this Settlement solely for the purposes of enforcing this agreement, addressing settlement administration matters, and addressing such post-judgment as may be appropriate under Court rules and applicable law.

7. This matter is set for a further case management conference on April 8, 2025. An updated joint case management statement is due April 7, 2025. The parties may request that the case management conference be continued if additional time is needed to complete the distribution. The conference will be vacated if the post-distribution accounting has been filed and the Court has released the remaining attorney's fees.

Judgement is hereby entered on the terms set forth above. The clerk shall close the file.

**IT IS SO ORDERED.**

Dated: October 30, 2024

_____
JON S. TIGAR
United States District Judge